CITIZENS BANK & TRUST COMPANY, Plaintiff-Appellant, *v.* OTTIS E. PITTMAN *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 76-1421

Opinion filed August 17, 1977.

Anthony T. Buckun, of Chicago (David F. Holland, of counsel), for appellant.

James R. Mitchell and Joseph S. Parisi, both of Chicago (Masuda, Funai, Eifert & Mitchell, of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

The plaintiff, Citizens Bank & Trust Company, an Illinois banking corporation, brought this action against the defendants, Ottis E. and Elinor D. Pittman, residents of California, to recover the balance of $34,330 due on a loan of $429,000 secured by a promissory note and subsequent renewal note. Defendants filed a special and limited appearance and moved the court to quash service of process for lack of personal jurisdiction. Plaintiff appeals from the trial court's order granting the motion to quash service of summons.

Involved here is an interpretation of section 17 of the Civil Practice Act (the Illinois long-arm statute) which provides in pertinent part as follows:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(a) The transaction of any business within this State; * * *."
(Ill. Rev. Stat. 1975, ch. 110, par. 17.)

After considering the pleadings, affidavits, and hearing argument, the trial court stated that the point was very close, but held that plaintiff had failed to establish sufficient minimum contacts so as to subject defendants to jurisdiction in Illinois. Defendants' motion to quash service of summons recited that they did not reside in Illinois and had not been physically present in Illinois in connection with any of the transactions upon which this action is based. These facts are undisputed.

In addition to its amended complaint, plaintiff presented two affidavits executed by Robert C. Packheiser, its assistant cashier. He stated that he handled defendants' account for plaintiff. Plaintiff made a loan of $429,000 to defendants in order that the latter might purchase $250,000 of C.I.T. debentures and $250,000 of U.S. Steel debentures. Garvin Bantel Corp. of New York, Los Angeles, and Houston, representing defendants, arranged the procedure to be followed and prepared the original note signed by defendants. The undated note was signed by the plaintiffs in California and was forwarded to plaintiff by Garvin. The note provided on its face that the loan had been made and delivered in Illinois, and would be governed by the laws of Illinois. Packheiser's affidavit also recited that defendant Ottis Pittman had received an earlier loan from plaintiff. This note was paid and is not involved in this appeal.

Prior to the making of the loan by plaintiffs, defendants by letter on December 23, 1968, made their first interest payment of $30,566.29 directly to plaintiff. That letter contained both defendants' names but apparently was written by Mrs. Pittman. On January 6, 1969, after

determining the market price of the bonds, plaintiff filled in the date and granted the loan. The bonds were purchased in New York and were held as collateral for the loan by a New York bank in safekeeping for plaintiff. Defendants sent their interest payments directly to plaintiff by mail in 1970, 1971, and 1972. In 1970, the defendants by written order caused the C.I.T. bonds to be sold and the loan was reduced accordingly. On April 1, 1970, the defendants signed a renewal note reflecting the reduced balance. In addition to the letter of December 23, 1968, attached to Packheiser's second affidavit were copies of the original and renewal note, and the instructions to sell the C.I.T. bonds. Attached also was an undated letter from Ottis Pittman to Packheiser regarding the restoration rather than reduction of his loan for tax reasons covering 1970 and alluding to a telephone conversation he had with Packheiser and stating that he believed the loan deficit would be reduced to zero in the near future. The affidavit also contained a copy of a telegram sent by Pittman to Packheiser complaining of the plaintiff's failure to send him an interest payment. The instruction to plaintiff to sell the C.I.T. bonds, signed by both defendants, was under the letterhead of Garvin Bantel.

In 1973 the defendants did not pay the interest which had accrued. In October 1973 plaintiff sold the remaining bonds and applied the proceeds to reduce the outstanding loan. Subsequently plaintiff confessed judgment in Cook County against defendants for the unpaid balance. Plaintiff caused a summons to confirm the confession judgment to be issued by the clerk of the circuit court of Cook County. Defendants filed a special and limited appearance and moved the court to vacate the confession judgment on the ground that the court lacked jurisdiction. The court vacated the judgment by confession. On March 18, 1976, plaintiff filed its amended complaint at law with summons served personally on the defendants in Orange County, California. Defendants filed their motion to quash service of process. Thereafter, the court entered the order which is the subject of the present appeal.

In the case of *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 320, 90 L. Ed. 95, 104, 66 S. Ct. 154, the Supreme Court enunciated the constitutional standards which must be met in order to obtain jurisdiction over nonresident defendants through State long-arm statutes:

"* * * Whether due process is satisfied must depend * * * upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations."

The court went on to state that the relationship of the defendant to the

forum State must comport with the "traditional conception of fair play and substantial justice" before the State can compel the nonresident defendant to answer and defend the claim against it.

■■■ Our supreme court upheld the constitutionality of section 17 of the Civil Practice Act in *Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673. In so doing, the court observed that while the conscious purpose of the long-arm statute is to assert jurisdiction over non-resident defendants, such purpose is limited to the extent permitted by the due process clause. No mechanical test may be applied. Each case of contested jurisdiction must be evaluated on its particular facts and circumstances. (*Stansell v. International Fellowship, Inc.* (1974), 22 Ill. App. 3d 959, 318 N.E.2d 149.) The determination must be made according to what is fair and reasonable in the situation before the court. One factor which must be given considerable weight is whether the defendants, through their activities, voluntarily invoked the protections and benefits of the State of Illinois. *Muffo v. Forsyth* (1976), ·37 Ill. App. 3d 6, 345 N.E.2d 149.

■■ Under the foregoing criteria, we believe that the requisite minimum contact exists between defendants and Illinois to support *in personam* jurisdiction. In our view, a significant contact was the fact that the nonresident defendants mailed their first year's interest payment to the plaintiff bank in Illinois more than two weeks before the loan was made. It should also be noted that only after the receipt of that interest payment, plaintiff approved the security, filled in the date of the note, and disbursed the funds. For three years thereafter, defendants continued to make their interest payments to plaintiff directly by mail. Moreover, defendants subsequently signed an instruction to plaintiff directing plaintiff to sell certain bonds and apply the funds in a certain way. The note itself provided that it had been delivered in Illinois and should be governed by Illinois law. We believe that concepts of fair play and substantial justice compel a conclusion that defendants had a relationship with Illinois sufficient that they be made to appear and defend the suit against them. It is our view that under all the facts and circumstances of the case that defendants voluntarily invoked the protections and benefits of the State of Illinois. See *Cook Associates, Inc. v. Colonial Broach & Machine Co.* (1973), 14 Ill. App. 3d 965, 304 N.E.2d 27; *First Professional Leasing Co. v. Rappold* (1974), 23 Ill. App. 3d 420, 319 N.E.2d 324; *Colony Press, Inc. v. Fleeman* (1974), 17 Ill. App. 3d 14, 308 N.E.2d 78.

For the reasons stated, the order of the circuit court of Cook County quashing service of process is reversed, and the cause is remanded for further proceedings consistent with the holdings of this opinion.

Order reversed and cause remanded.

JIGANTI and McGILLICUDDY, JJ., concur.