MERGENTHALER LINOTYPE COMPANY, Plaintiff-Appellee, *v.* LEONARD STORCH ENTERPRISES, INC., *et al.*, Defendants-Appellants.

First District (4th Division)　No. 78-358

Opinion filed November 30, 1978.

Sonnenschein, Carlin, Nath & Rosenthal and William J. Harte, Ltd., both of Chicago (Harold C. Hirshman, Gary S. Gildin, and William J. Harte, of counsel), for appellants.

Jerold S. Solovy and Robert L. Byman, both of Jenner & Block, of Chicago, for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The questions before this court are whether an Illinois court has jurisdiction to enjoin the committing of allegedly tortious acts of unfair competition taking place in Illinois and other States when neither party is a resident of Illinois, and whether, under the circumstances, the Illinois trial court should entertain even that part of the complaint concerned with the defendant's activities in Illinois or should dismiss the case on the ground of *forum non conveniens*. We hold that section 17 of the Civil Practice Act (Long Arm Statute) (Ill. Rev. Stat. 1977, ch. 110, par. 17) does not give an Illinois court jurisdiction to enjoin a New York corporation from selling a product made exclusively in New York to someone in one of the 49 States other than Illinois since, as the plaintiff is not an Illinois resident, no injury was suffered in Illinois because of such sales. We do hold that we have jurisdiction over the defendant corporation (but not its president) as to that part of the claim of unfair competition arising out of the shipping of goods into Illinois. But we further hold that in view of the facts that neither party is a resident of Illinois; the defendant, a small corporation, would be seriously disadvantaged if forced to defend in Illinois; the defendant corporation's contacts with Illinois, while sufficient for jurisdictional purposes, are slight; the witnesses to the alleged piracy are all in New York; New York law is the appropriate law to be applied; and, most importantly, an Illinois court can resolve only a part of the litigation leaving much of the question unresolved, whereas a court in New York would have jurisdiction to resolve the whole controversy between the parties, the complaint should be dismissed on the grounds of *forum non conveniens*.

The plaintiff Mergenthaler Linotype Company (Mergenthaler) is a

division of Electra Corporation. Both Mergenthaler and Electra are New York corporations authorized to do business in Illinois. Mergenthaler's midwest office is located in Illinois. This office is the largest sales office in the Mergenthaler Company. The total sales volume for the midwest office in the fiscal year 1977 was in excess of $6 million.

On October 17, 1977, Mergenthaler filed a suit in Cook County, Illinois, accusing Leonard Storch Enterprises, and Leonard Storch individually, of unfair competition in copying its V.I.P. film fonts. V.I.P. photocomposing machines are used by commercial typesetters, advertisers, printers and others to set type for printed material. A film font used by the V.I.P. machine contains 96 typographical characters including letters and other characters. Mergenthaler offers more than 900 different type faces. A typical V.I.P. owner owns from 20 to several hundred of these fonts.

According to Mergenthaler's complaint, it is necessary for it to go through many extensive steps to design and manufacture these film fonts. For this reason, each one costs between $50 and $150. Storch Enterprises apparently is selling exact copies of these fonts at a substantially lower price, thus diverting sales from Mergenthaler. Mergenthaler, in its complaint, alleges that the defendants produce these fonts simply by making inexpensive photographic reproductions of the fonts and then reproducing them. Since the production costs are minimal, the corporation is able to sell the fonts at a lower price than Mergenthaler can. This, Mergenthaler complains, is unfair competition.

Mergenthaler, in its complaint, asks that the defendants be enjoined from duplicating or directly reproducing plaintiff's film fonts, in whole or in part, and from making any further sales of film fonts that duplicate or directly reproduce, in whole or in part, plaintiff's film fonts. Mergenthaler further asks that the defendants be ordered to return any and all fonts in their possession which are, in whole or in part, duplicates of plaintiff's fonts; that plaintiff be awarded $1.5 million in actual damages and $1.5 million in punitive damages; and further that the defendant be made to account for any profit realized as a result of the conduct alleged in the complaint.

In its complaint, Mergenthaler alleges that the cause of action arises out of the transaction of business in Illinois and the commission of a tortious act in Illinois. In fact, however, it is clear that the complaint does not limit itself to those acts committed in Illinois and the damage resulting therefrom.

Storch Enterprises, like Mergenthaler, is a New York corporation. Unlike Mergenthaler, it does not have a midwest office. Its only office outside of New York is in Texas where one of its 16 employees (17 including Leonard Storch, its president) works. All of Storch's business outside of New York is done by mail and phone order; it advertises in

national magazines and by mail solicitations sent into all States. Only about 5 percent of its sales are to Illinois residents. During the two years preceding this lawsuit, Storch Enterprises sold only about $50,000 worth of fonts to Illinois customers, and not all of these were V.I.P. fonts. None of these sales were obtained by personal contact in Illinois. Mr. Storch was in Illinois only twice in the year preceding the lawsuit; once overnight to attend a meeting, the second for the taking of a deposition in connection with an antitrust suit filed in a New York Federal court against Alphatype Corporation.

Both the plaintiff's and the defendants' fonts are manufactured, in this country, solely in New York. (Mergenthaler also manufactures fonts in Germany.) Mergenthaler manufactures its fonts in Plainview, New York. The machinery involved in the manufacture cannot be moved from New York. All the letter drawings, friskets and plaques Mergenthaler uses to produce fonts are catalogued and stored in Plainview.

Likewise, all of the defendants' fonts are produced in New York. (Some of the technical assistance comes from the Dallas employee.) Also, all supplies currently used by Storch Enterprises to manufacture the fonts are purchased in New York City. All fonts are stored in New York City and are shipped from there; none are stored in or shipped from Illinois. All orders are submitted to and approved in New York. All of the corporation's files, records and bank accounts are in New York.

Storch is a small corporation. Leonard Storch is its sole stockholder. The year before the complaint was filed Storch Enterprises' total revenues were about $700,000.

After the complaint was filed, the defendants filed a special appearance and moved to dismiss for want of jurisdiction. The trial judge denied the motion but indicated he was inclined to grant a motion to dismiss for *forum non conveniens*. After hearing arguments, however, he denied the defendants' motion to dismiss for *forum non conveniens* on February 10, 1978, apparently reasoning that since the plaintiff does business in Illinois, it had a right to sue in Illinois. He also stated at that time that it was a close question and certified both the question of jurisdiction and of *forum non conveniens* for immediate review by this court. On April 27, 1978, this court granted the defendants leave to appeal under Supreme Court Rule 308 (Ill. Rev. Stat. 1977, ch. 110A, par. 308), which permits interlocutory appeal of controlling questions of law in certain cases where the trial court finds that there is substantial ground for difference of opinion and that an intermediate appeal from the order may materially advance the ultimate termination of the litigation. We also granted the defendants' motion to stay the trial court proceedings pending our determination on appeal.

Early in 1978, Storch Enterprises filed a complaint in a New York

Federal court against Mergenthaler alleging violation of the Federal antitrust law through exclusive dealing, disparagement of Storch's products, harassment through legal action, false assertion of exclusive rights and false assertion and representation of exclusive protection and seeking a declaration that Mergenthaler's type fonts are not covered by a design patent or copyright, and that the material appearing on such fonts is therefore in the public domain. On May 24, 1978, the Federal district court denied Mergenthaler's motion to dismiss or stay the proceedings because of the suit pending in Illinois.

## I.

■ It is clear from the facts, and the plaintiff does not contend otherwise, that the defendants are not authorized to do business in Illinois and are not doing business in Illinois to such an extent as to be subject to suit in Illinois in the absence of a statute purporting to extend jurisdiction to the limits permitted by the due-process clause. Illinois does have such a statute. (*Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673; *International Merchandising Associates, Inc. v. Lighting Systems, Inc.* (1978), 64 Ill. App. 3d 346, 380 N.E.2d 1047.) The Illinois Long Arm Statute (Ill. Rev. Stat. 1977, ch. 110, par. 17(1)), extends the jurisdiction of the court

> "* * * to any cause of action arising from the doing of any of such acts:
>> (a) The transaction of any business within this State;
>> (b) The commission of a tortious act within this State;
>> * * *."

■ The plaintiff's claim against the defendant is in tort. It is well established that under section 17(1)(b) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 17(1)(b)), a single tortious act occurring in Illinois will establish jurisdiction in Illinois, even though the defendant has no other contact in Illinois and has never been in Illinois. (*Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673; *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761; *Honeywell, Inc. v. Metz Apparatewerke* (7th Cir. 1975), 509 F.2d 1137.) It is also well settled that the term "tortious act" inevitably includes the concept of injury, and that for the purposes of section 17(1)(b) the situs of the tort is the place where the injury occurs. *Bolf v. Wise* (1970), 119 Ill. App. 2d, 203, 255 N.E.2d 511; *Honeywell, Inc. v. Metz Apparatewerke* (7th Cir. 1975), 509 F.2d 1137.

■ It is doubtful whether the complaint sets forth a tortious act, *i.e.*, a breach by the defendant of some duty owed. (See *Sears, Roebuck & Co. v. Stiffel Co.* (1964), 376 U.S. 225, 11 L. Ed. 2d 661, 84 S. Ct. 784.) We do not, however, rule on this issue since we find that the complaint does not

allege the commission of a tortious act in Illinois because there is no showing that the injury occurred in Illinois.

■■ The injury to the plaintiff in this case is only to its pocketbook. It is alleging that it lost sales because of the defendants' misdeeds and because it lost sales, it lost profits. But the plaintiff's pocketbook is located in New York where it resides, *i.e.*, has its major place of business. The plaintiff on oral argument contended that the injury occurred in Illinois since the salesmen at the Midwest office felt the loss of sales. But the salesmen are not suing and Mergenthaler is not suing on their behalf for their lost commissions, assuming that they are paid by commission. It is true that an Illinois salesman of Mergenthaler's would be able to bring suit in Illinois, assuming he had a cause of action, but Mergenthaler cannot claim jurisdiction just because someone else can.

Our conclusion is consistent with the holding in the recent case of *International Merchandising Associates, Inc. v. Lighting Systems, Inc.* (1978), 64 Ill. App. 3d 346, 380 N.E.2d 1047. In that case, the plaintiff, an Illinois corporation with its principal place of business in Illinois, sued the defendant for breach of a distributorship contract with the plaintiff, alleging that although it had been agreed that the plaintiff was to be the defendant's exclusive representative, the defendant had sold large quantities of goods directly without accounting for the commissions due. There was no suggestion that these sales by the defendant, a Pennsylvania corporation, were made to Illinois customers. The court found that there was jurisdiction under section 17(1)(b) because the effect of the alleged tortious interference with the distributorship agreement was felt directly in Illinois. If the court was not applying the test that the economic injury was suffered in the state where the plaintiff corporation was located, then there would have been no way in which that section would have been applicable to any tortious interference consisting of sales made to non-Illinois customers.

## II.

Since we have concluded that the defendants are not doing business in Illinois to the extent they can be treated as residents of Illinois (*Lindley v. St. Louis-San Francisco Ry. Co.* (7th Cir. 1968), 407 F.2d 639), and that no tortious act was committed in Illinois, we can only find jurisdiction over the defendants if we can find that they transacted business in Illinois within the scope of section 17(1)(a).

## A

■■ ■ The plaintiff in arguing the case has apparently assumed that if jurisdiction is found as to the claim against Storch Enterprises, it must automatically follow that jurisdiction exists as to the claim against

Leonard Storch himself. But this is not so. The mere fact that a corporation by which a nonresident is employed, or in which he is a stockholder is itself subject to Illinois jurisdiction does not subject that nonresident to jurisdiction. (*Insull v. New York World-Telegram Corp.* (N.D. Ill. 1958), 172 F. Supp. 615, *aff'd* (7th Cir. 1959), 273 F.2d 166, *cert. denied* (1960), 362 U.S. 942, 4 L. Ed. 2d 770, 80 S. Ct. 807.) The burden is on the plaintiff to show the existence of jurisdiction. (*Cohan v. Municipal Leasing Systems, Inc.* (N.D. Ill. 1974), 379 F. Supp. 1022.) This, as to Leonard Storch, the plaintiff has failed to do. Any transaction of business with Illinois residents was by the corporation and not by the employee individually. Certainly Mr. Storch's two visits to Illinois, one to attend a convention, one in connection with litigation, cannot constitute the transaction of business in Illinois. Furthermore, the cause of action did not arise out of those two visits, as required by section 17(3) of the Civil Practice Act. Accordingly, it is clear that this court does not have jurisdiction over the claim against Leonard Storch.

### B

■■ The question of jurisdiction over the claim against Leonard Storch Enterprises, Inc., is much more difficult. No mechanical test as to the application of section 17 can be applied. Rather, each case of contested jurisdiction must be evaluated on its particular facts and circumstances. (*Citizens Bank & Trust Co. v. Pittman* (1977), 52 Ill. App. 3d 137, 367 N.E.2d 265.) The determination must be made according to what is fair and reasonable in the situation before the court. (*Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761; *Citizens Bank & Trust Co. v. Pittman* (1977), 52 Ill. App. 3d 137, 367 N.E.2d 265; *Wiedemann v. Cunard Line, Ltd.* (1978), 63 Ill. App. 3d 1023, 380 N.E.2d 932.) Jurisdiction is not merely dependent upon contacts with this state but upon such factors as the nature of the business transaction, the applicability of Illinois law, the contemplation of the parties and the likelihood that witnesses would be found here. (*Colony Press, Inc. v. Fleeman* (1974), 17 Ill. App. 3d 14, 308 N.E.2d 78.) A key inquiry is whether the defendant, through its activity, voluntarily invoked the protection and benefits of the State of Illinois. *Citizens Bank & Trust Co. v. Pittman* (1977), 52 Ill. App. 3d 137, 367 N.E.2d 265; *Central Clearing, Inc. v. Omega Industries, Inc.* (1976), 42 Ill. App. 3d 1025, 356 N.E.2d 852.

In *Grobark v. Addo Machine Co.* (1959), 16 Ill. 2d 426, 158 N.E.2d 73, the Illinois Supreme Court concluded that since the defendant had never been physically present in Illinois, jurisdiction did not exist under section 17(1)(a). In *Grobark*, as in the present case, the defendant was a New York corporation which manufactured machines outside of Illinois and shipped these machines to purchasers throughout the United States.

Likewise, in *Grobark*, as in this case, the defendants at no time maintained any office in Illinois nor employed any officers, agents or employees or other persons within the State. Its sales to Illinois residents were, as here, consummated when the orders were accepted in New York and delivered to an independent carrier in New York. Obviously, if *Grobark* is still the law, it is controlling here and there is no jurisdiction.

■■ *Grobark* has never been expressly overruled by the Illinois Supreme Court. However, the appellate courts of this State have consistently assumed that, to the extent that *Grobark* stands for the proposition that jurisdiction cannot be found under section 17(1)(a) unless the defendant had been physically present in Illinois, it was impliedly overruled by *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761, which found jurisdiction under section 17(1)(b) although the defendant had never been physically present in Illinois, the appellate courts reasoning that there is no reason to apply a different test to section 17(1)(a) actions than to section 17(1)(b) actions. (*Koplin v. Thomas, Haab & Botts* (1966), 73 Ill. App. 2d 242, 219 N.E.2d 646, *appeal denied* (1967), 35 Ill. 2d 629; *First Professional Leasing Co. v. Rappold* (1974), 23 Ill. App. 3d 420, 319 N.E.2d 324.) Despite *Grobark*, it is clearly established in Illinois today that jurisdiction may be found under section 17(1)(a) although the defendant was never physically present in Illinois. *Willis v. West Kentucky Feeder Pig Co.* (1971), 132 Ill. App. 2d 266, 265 N.E.2d 899; *Cook Associates, Inc. v. Colonial Broach & Machine Co.* (1973), 14 Ill. App. 3d 965, 304 N.E.2d 27; *Colony Press, Inc. v. Fleeman* (1974), 17 Ill. App. 3d 14, 308 N.E.2d 78; *First Professional Leasing Co. v. Rappold* (1974), 23 Ill. App. 3d 420, 319 N.E.2d 324; *Ward v. Formex, Inc.* (1975), 27 Ill. App. 3d 22, 325 N.E.2d 812; *Tabor & Co. v. McNall* (1975), 30 Ill. App. 3d 593, 333 N.E.2d 562, *appeal denied* (1975), 61 Ill. 2d 600; *Citizens Bank & Trust Co. v. Pittman* (1977), 52 Ill. App. 3d 137, 367 N.E.2d 265; *Volkswagen Insurance Co. v. Whittington* (1978), 58 Ill. App. 3d 621, 374 N.E.2d 954; *International Merchandising Associates, Inc. v. Lighting Systems, Inc.* (1978), 64 Ill. App. 3d 346, 380 N.E.2d 1047; and see *Koplin v. Thomas, Haab & Botts* (1966), 73 Ill. App. 2d 242, 249 N.E.2d 646, *appeal denied* (1967), 35 Ill. 2d 629.

■■ It is clear from *Tabor & Co. v. McNall* (1975), 30 Ill. App. 3d 593, 333 N.E.2d 562, *appeal denied* (1975), 61 Ill. 2d 600, and *Willis v. West Kentucky Feeder Pig Co.* (1971), 132 Ill. App. 2d 266, 265 N.E.2d 899, that the mere shipping of goods by the defendant or agreement to ship goods into Illinois may be sufficient to establish jurisdiction under section 17(1)(a), at least where the suit is by the purchaser. In *Tabor*, a Nevada corporation, authorized to do business in Illinois, contracted by telephone and letter to have the defendant, a Wisconsin corporation, deliver grain to the plaintiff in Illinois. The defendant sent some grain and then defaulted.

Jurisdiction for breach of contract was found under section 17(1)(a). In *Willis*, the defendant shipped several orders of pigs to the plaintiff in Illinois. The plaintiff paid the truck driver for the pigs at the time of delivery, the check being made payable to the defendant. The court found jurisdiction in a suit for breach of warranty under section 17(1)(a).

Since a single act of a defendant can be sufficient to establish jurisdiction under section 17(1)(a) (*International Merchandising Associates, Inc. v. Lighting Systems, Inc.* (1978), 64 Ill. App. 3d 346, 380 N.E.2d 1047; *Cook Associates, Inc. v. Colonial Broach & Machine Co.* (1973), 14 Ill. App. 3d 965, 304 N.E.2d 27), it would not seem to matter whether the defendant shipped only one item into the state or many, one time or continuously, as long as the business that is done is related to the cause of action. (*International Merchandising Associates, Inc. v. Lighting Systems, Inc.* (1978), 64 Ill. App. 3d 346, 380 N.E.2d 1047; *Volkswagen Insurance Company v. Whittington* (1978), 58 Ill. App. 3d 621, 374 N.E.2d 954.) In this case, it seems clear that the defendant corporation's activities in shipping goods into Illinois were sufficiently substantial that it would not be unreasonable, unfair, unduly burdensome or contrary to due process to expect it to respond to a claim of one of its Illinois purchasers in an Illinois forum.

■■ ■ The problem here, of course, is that the suit is not by one of the corporation's customers. It is by a New York corporation objecting to the fact that the defendant is selling the goods in Illinois. However, bearing in mind (1) that section 17 is designed to be remedial and is to be liberally construed in favor of the state asserting jurisdiction (*Ward v. Formex, Inc.* (1975), 27 Ill. App. 3d 22, 325 N.E.2d 812); (2) that the policy of Illinois is to keep its courts open to residents and nonresidents alike (*James v. Grand Trunk Western R.R. Co.* (1958), 14 Ill. 2d 356, 152 N.E.2d 858, *cert. denied* (1958), 358 U.S. 915, 3 L. Ed. 2d 239, 79 S. Ct. 288); and (3) that if trial in Illinois is unduly burdensome, the proper remedy is not to deny jurisdiction where, in fact, it exists, but to dismiss for *forum non conveniens* (see *Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673), we conclude that since it is clear that a purchaser could sue Storch Enterprises in Illinois, we must find that Mergenthaler can also sue Storch Enterprises in Illinois to enjoin the sale of film fonts in Illinois and to recover damages for the sales in Illinois.

■ ■ However, the plaintiff's complaint was not limited to transactions occurring in Illinois. The plaintiff sought to enjoin all sales regardless of where they occur and recover damages arising out of these sales, again regardless of the state in which the sales took place. Section 17(3) of the Civil Practice Act clearly provides that only causes of action arising from acts enumerated in section 17(1) may be asserted against a defendant in an action in which jurisdiction over him is based upon section 17(1). It is

obvious that this court has no jurisdiction under section 17(1)(a) over a sale in New York by a New York party to New Jersey, California or elsewhere except to Illinois. Those sales can hardly be considered to be the transacting of business within Illinois. Since section 17(3) does not permit the joinder of a claim which is wanting in personal jurisdictional facts with one which is supported by those facts (*Rovin Sales Co. v. Socialist Republic of Romania* (N.D. Ill. 1975), 403 F. Supp. 1298), it would not be proper for the court to exercise jurisdiction, in light of the defendants' motion to dismiss for want of jurisdiction, unless the plaintiff agreed to amend its complaint to limit the claims to transactions occurring in Illinois.

## III.

■■■■ Having determined that the trial court may have jurisdiction over that part of the claim pertaining to the sales of the copied items to Illinois customers, we must now decide whether the trial court erred in denying the defendants' motion to dismiss on the grounds of *forum non conveniens*. *Forum non conveniens* is a doctrine that is founded in consideration of fundamental fairness and sensible and effective judicial administration. (*Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 301 N.E.2d 729, *cert. denied* (1976), 424 U.S. 943, 47 L. Ed. 2d 349, 96 S. Ct. 1411.) While it is true that the plaintiff's choice of forum is rarely disturbed unless the balance of factors relative to the inconvenience of trying the case in the forum court is strongly in favor of the defendant (*Amerian Home Assurance Co. v. Northwest Industries, Inc.* (1977), 50 Ill. App. 3d 807, 365 N.E.2d 956, *appeal denied* (1977), 66 Ill. 2d 637, nevertheless, it is still settled law that in the application of the consideration of fundamental fairness and sensible and effective judicial administration, "a court may decline jurisdiction of a case 'even though it may have proper jurisdiction over all parties and the subject matter involved' (*Whitney v. Madden* (1948), 400 Ill. 185, 189, *cert. denied*, 335 U.S. 828, 93 L. Ed. 382, 69 S. Ct. 55), whenever it appears that there is another forum that can better 'serve the convenience of the parties and the ends of justice.' *Lonergan v. Crucible Steel Co. of America* (1967), 37 Ill. 2d 599, 606.)" *Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 514, 301 N.E.2d 729, 730, *cert. denied* (1976), 424 U.S. 943, 47 L. Ed. 2d 349, 96 S. Ct. 1411.

■■■■ The doctrine of *forum non conveniens* presupposes the existence of at least two alternative forums in which jurisdiction over the defendants to an action may be secured. (*McDonald's Corp. v. Smargon* (1975), 31 Ill. App. 3d 493, 334 N.E.2d 385; *Lonergan v. Crucible Steel Co. of America* (1967), 37 Ill. 2d 599, 229 N.E.2d 536.) Assuming this is found, then as the court said in *Gulf Oil Co. v. Gilbert* (1947), 330 U.S. 501, 508-

09, 91 L. Ed. 1055, 1062-63, 67 S. Ct. 839, 843, and quoted in *Cotton v. Louisville & Nashville R.R. Co.* (1958), 14 Ill. 2d 144, 159-60, 152 N.E.2d 385, 392, 393, and again in *Giseburt v. Chicago, Burlington & Quincy R.R. Co.* (1963), 45 Ill. App. 2d 262, 265-66, 195 N.E.2d 746, 748, *appeal denied* (1964), 30 Ill. 2d 625:

> "Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. * * *
>
> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation. * * *. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

In addition, the relative convenience of the witnesses and the parties should be considered. (*Giseburt v. Chicago, Burlington & Quincy R.R. Co.* (1963), 45 Ill. App. 2d 262, 195 N.E.2d 746, *appeal denied* (1964), 30 Ill. 2d 625.) When we weigh all of these factors, it is clear that the considerations of fundamental fairness and sensible and effective judicial administration demand that this suit be dismissed.

1. Jurisdiction:

It is obvious that another forum exists in which jurisdiction over the defendant may be secured. The defendants, like the plaintiff, are residents of New York. The majority of the acts complained of occurred in New York. There can be no difficulty in obtaining jurisdiction over the defendants in New York.

This case is, however, different from most where the doctrine of *forum non conveniens* has been considered. In most cases the two possible forums both equally had jurisdiction. Here this is not so. Illinois, as we have already ruled, has jurisdiction over only a small portion of the plaintiff's claim. There is no way that we can have jurisdiction to hear a New York resident's complaint that a New York defendant not doing

business in Illinois should not be allowed to manufacture goods in New York and sell them to New York or California or New Jersey. But New York can make this determination. Any determination made in Illinois would result only in piecemeal litigation; it is questionable whether our determination as to the propriety of selling such goods in Illinois would even be binding on a court in New York or New Jersey or California; whereas a determination by a court in New York may resolve the entire controversy. Piecemeal litigation is not favored. For this reason alone, the trial court should have granted the defendant's motion to dismiss because of *forum non conveniens*. However, the other factors enumerated in the cases also weigh strongly in favor of the defendant.

2. Relative ease of access to the sources of proof and possibility of view of the premises:

It is obvious that all the witnesses and evidence as to the basic issue, whether the defendants are guilty of unfair competition in copying the plaintiff's font, are in New York. The plaintiff has alleged in detail the many expensive steps required in their manufacture and has contended that precisely because these steps are so expensive, the copying by the defendants is actionable. Yet the evidence as to these steps and the site where they take place is in New York. Likewise it may become useful to examine the corporate plant, but that too is in New York. It would be impracticable to fly an Illinois judge and jury to New York for such a view.

3. Availability of compulsory process for the attendance of unwilling, and the cost of obtaining attendance of willing, witnesses:

Employees of the parties can, of course, be compelled to appear, pursuant to Supreme Court Rule 237 (Ill. Rev. Stat. 1977, ch. 110A, par. 237). Even so, the cost of flying all of the witnesses from New York to Illinois and providing lodging and meals during what may well be a prolonged trial could be astronomical, particularly to a small company like Storch Enterprises. Furthermore, Illinois has no power to force unwilling New York witnesses who are not employed by the parties to appear at trial; the plaintiff has not suggested that there are no such witnesses. Depositions may, of course, be taken but they are not as satisfactory as a witness' actual appearance before the jury.

4. Convenience of the parties:

It is obvious that the New York forum would be more convenient to both parties since they are both residents of New York.

5. The local interest in having localized controversies tried at home:

The copying which is complained of took place in New York. All the manufacture occurred in New York. Only 5 percent of Storch's fonts are delivered to Illinois; 95 percent, therefore, are delivered elsewhere. All of them are sold in New York; none of the sales actually occur in Illinois. The

plaintiff is not complaining only about the Illinois sales, nor is it contending that there was something special which made the sale to Illinois customers wrongful and injurious whereas the sales to other customers were not. In short, this is a New York controversy and should be tried there.

6. The law of which State is applicable:

■■ Generally, where a plaintiff sues because of the appropriation of proprietary information or trade secrets, the court will apply the law of the state where the alleged wrong was committed, that is where the information was used or the benefit of the use by the defendant was enjoyed—that is the principal place of the defendant's business. (*Crown Industries, Inc. v. Kawneer Co.* (N.D. Ill. 1971), 335 F. Supp. 749; *Smith v. Dravo Corp.* (7th Cir. 1953), 203 F.2d 369.) In this case, the principal place of the defendant's business is New York. Illinois recently has adopted the Restatement (Second) of Conflict of Laws (1971) position that the choice of law is to be determined by the evaluation of certain contacts. (*Jackson v. Miller-Davis Co.* (1976), 44 Ill. App. 3d 611, 358 N.E.2d 328, *appeal denied* (1977), 65 Ill. 2d 581; *Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 262 N.E.2d 593.) Comment F, section 145 of the Restatement (Second), at pages 423-24, points out that:

> "* * * On the other hand, the place of injury is less significant in the case of fraudulent misrepresentations * * * and of such unfair competition as consists of false advertising and the misappropriation of trade values. The injury suffered through false advertising is the loss of customers or of trade. Such customers or trade will frequently be lost in two or more states. The effect of the loss, which is pecuniary in its nature, will normally be felt most severely at the plaintiff's headquarters or principal place of business. But this place may have only a slight relationship to the defendant's activities and to the plaintiff's loss of customers or trade. The situation is essentially the same when misappropriation of the plaintiff's trade values is involved, except that the plaintiff may have suffered no pecuniary loss but the defendant rather may have obtained an unfair profit. For all these reasons, the place of injury does not play so important a role for choice-of-law purposes in the case of false advertising and the misappropriation of trade values as in the case of other kinds of torts. Instead, the principal location of the defendant's conduct is the contact that will usually be given the greatest weight in determining the state whose local law determines the rights and liabilities that arise from false advertising and the misappropriation of trade values."

Again this is New York.

Finally, while it is not necessary that the defendant prove that the

plaintiff's choice of forum was motivated by an actual intent to harass or vex the defendant (*People ex rel. Chesapeake & Ohio Ry. Co. v. Donovan* (1964), 30 Ill. 2d 178, 195 N.E.2d 634), it is obvious that, regardless of the plaintiff's actual intent and motive, its conduct in choosing Illinois as a forum can only have that effect. Since the litigation will not resolve all the issues, the plaintiff, if it is allowed to file suit in Illinois, may simultaneously file injunction actions in other states. Furthermore, the defendant, a small company, may be crushed by the cost of litigating in Illinois. Victory for the defendant would by Pyrrhic, indeed, if it is ruined by the costs of defending.

### IV.

The plaintiff, however, contends that the trial court having exercised its discretion in denying the defendant's motion (*People ex rel. Chesapeake & Ohio Ry. Co. v. Donovan* (1964), 30 Ill. 2d 178, 195 N.E.2d 634; *Fender v. St. Louis Southwestern Ry. Co.* (1971), 49 Ill. 2d 1, 273 N.E.2d 353), we are not at liberty to reverse. First of all, it is not clear from the record that the trial judge did actually exercise his discretion in the case. He made no findings, and indeed his determination does not appear on the face of the record. It is not clear whether he did in fact weigh the material factors or whether he simply determined that since Illinois had jurisdiction, the plaintiff was free to choose Illinois as the forum. In any event, he made his determination under the erroneous belief that Illinois had jurisdiction over the entire claim. Also, it is clear from the record that at the same time the trial judge decided reluctantly (and the reluctance is clear through the report of proceedings) to deny the motion, he had decided to certify the question to this court for determination. When a judge certifies a question to the appellate court for determination, it is difficult to say that he deliberately exercised his discretion in reaching the conclusion that he did.

Furthermore, it has never been the law that a trial judge, having exercised his discretion in a certain area, cannot be reversed. (*Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 301 N.E.2d 729, *cert. denied* (1976), 424 U.S. 943, 47 L. Ed. 2d 349, 96 S. Ct. 1411; *Giseburt v. Chicago, Burlington & Quincy R.R. Co.* (1963), 45 Ill. App. 2d 262, 195 N.E.2d 746; *Stobbs v. Cumby* (1956), 9 Ill. App. 2d 138, 132 N.E.2d 448; *Virginia Corp. v. Russ* (1975), 27 Ill. App. 3d 608, 327 N.E.2d 403.) In this case all of the accepted criteria indicate that this is not a convenient forum. Indeed, we do not even have jurisdiction over much of the claim, so that if suit is pursued here rather than in New York where it should be, litigation in other States may and indeed must follow. This alone might be enough for us to hold that the defendant's motion to

dismiss should have been granted; coupled with the other factors it rendered dismissal for *forum non conveniens* imperative.

We echo the words of the court in *Giseburt v. Chicago, Burlington & Quincy R.R. Co.* (1963), 45 Ill. App. 2d 262, 270, 195 N.E.2d 746, 750, *appeal denied* (1964), 30 Ill. 2d 625:

> "We are well aware of the fact that few reviewing courts, if any, have ever reversed the discretion which is exercised by a judge in a forum non conveniens ruling. But were we not to do so in this case, the doctrine of forum non conveniens in this state would be emasculated. There is not one factor which justifies bringing this case across the entire length of Missouri to Illinois. The plaintiff does not point to one inconvenience or injustice to him upon a denial of jurisdiction here. * * *.

> But by bringing this case to Illinois, the plaintiff has chosen a forum which is purely vexatious to the defendant and which imposes unnecessary burdens upon Illinois courts. He has prevented the defendant from allowing the jury to visit the scene of the accident and has imposed considerable unnecessary expense upon the defendant to produce witnesses. He has required our courts to unravel foreign and unfamiliar law. He has taken up the time of our judges and imposed trial expenses upon our people.

> Everyone of the salient factors bearing upon the applicability of the doctrine of forum non conveniens discussed in this opinion and considered determinative by us was, or should have been, apparent to the trial judge at the time of the hearing upon the motion to dismiss."

Accordingly, for the foregoing reasons, the judgment of the trial court is reversed and the defendants' motion to dismiss the cause for *forum non conveniens* is granted.

Reversed.

JOHNSON, P. J., and O'CONNOR, J., concur.