In the Matter of MAHURKAR DOUBLE LUMEN HEMODIALYSIS CATHETER PATENT LITIGATION.

No. MDL 853.

United States District Court, N.D. Illinois, E.D.

Nov. 5, 1990.

Joseph N. Hosteny, Raymond P. Niro, John C. Janka, Michael P. Mazza, Niro, Scavone, Haller & Niro, Ltd., Chicago, Ill., for Sakharam D. Mahurkar and Quinton Instruments Co.

Alan L. Unikel, Maureen Gorman, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for Michael Reese Hosp., University of Chicago Hosp., Chicago Osteopathic Hosp. and Jackson Park Hosp.

Granger Cook, Jr., Mark J. Murphy, Cook, Egan, McFarron & Manzo, Ltd., Chicago, Ill., Marvin A. Glazer, Cahill, Sutton & Thomas, Phoenix, Ariz., for Impra, Inc.

H. Ross Workman, Workman, Nydegger & Jensen, Salt Lake City, Utah, for Kendall Med–West.

Steven J. Baron, American Home Products Co., Michael J. Sweedler, Anthony C. Coles, Darby & Darby, P.C., New York City, for Quinton Instruments Co.

## OPINION

EASTERBROOK, Circuit Judge.[†]

Shortly after I issued *Vas–Cath Inc. v. Mahurkar*, 745 F.Supp. 517 (N.D.Ill.1990), the Judicial Panel on Multidistrict Litigation transferred to me two related cases. A fourth case was transferred from within the Northern District of Illinois. On October 29, 1990, I held an initial conference to set schedules for the consolidated pretrial proceedings, and combined this with oral argument on a number of pending motions. This opinion disposes of motions that affect the scope of the litigation. A contemporaneous unpublished order sets ground rules for its conduct.

■ 1. One of the cases, *Kendall Mid–West v. Quinton Instruments Co.*, No. 90 C 152S (D.Utah), came from the District of Utah. At the time the Panel transferred the case under 28 U.S.C. § 1407, the district court in Utah had under advisement Mahurkar's motion to transfer the case under 28 U.S.C. § 1404(a). A § 1407 transfer covers only discovery and other pretrial matters; a case normally is returned to the originating district for trial. A § 1404(a)

Roy H. Wepner, Joseph S. Littenberg, John R. Nelson, Lerner, David, Littenberg, Krumholz & Mentlik, Westfield, N.J., for Vas–Cath Inc., Gambro, Inc. and Omni Medical Products.

Daniel W. Vittum, Jr., Russell E. Levine, Kirkland & Ellis, Chicago, Ill., for Vas–Cath Inc. and Omni Medical Products, Inc.

Arthur Sternberg, Pedersen & Houpt P.C., Chicago, Ill., for Gambro, for notice purposes only.

Michael W. Coffield, Michael J. Philippi, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for Geoffrey Martin and M. Jane Martin.

Samuel Fifer, Sonnenschein Nath & Rosenthal, Chicago, Ill., for Quinton Instruments Co.

† Of the Seventh Circuit, sitting by designation.

transfer moves the case for all purposes. Magistrate Gould of Utah recommends that the case be transferred to Illinois under § 1404(a); Kendall has objected to the magistrate's report. One of the pretrial questions within my province is whether to accept the magistrate's report and transfer the action to Illinois (that is, to me) under § 1404(a). *Manual on Complex Litigation* § 31.122 (2d ed. 1985).

On the eve of argument Kendall withdrew its objections to the magistrate's recommendation. As Kendall made clear orally, however, it wants to withdraw this objection without prejudice, so that at the end of the consolidated pretrial proceedings it may renew its request for a retransfer to Utah for trial. Holding this matter in stasis is a bad idea. Now is the time to decide whether the "home" court for the litigation is in Salt Lake City or Chicago. Kendall's suit could have been filed initially in the Northern District of Illinois, where Mahurkar resides. I conclude that the action can be more conveniently prosecuted in Chicago—not only for the reasons stated by Magistrate Gould, but also because of the Panel's consolidation of all of the catheter litigation here. Mahurkar's motion is granted, and the case is transferred to the Northern District of Illinois for all purposes under § 1404(a). This moots all questions concerning whether Utah can (or did) obtain personal jurisdiction over Mahurkar, and whether he is an indispensable party. Mahurkar has consented to the prosecution of *Kendall* against him in this district.

■ 2. The second case that the Panel transferred here came from the District of Arizona, where IMPRA, Inc., filed suit against Mahurkar and Quinton. While the Panel was deciding whether to transfer the case under § 1407, Judge Copple transferred it unconditionally under § 1404(a). Judge Copple's order was made on June 22, 1990, and filed on June 26. On June 28 IMPRA filed in Arizona a notice under Fed.R.Civ.P. 41(a)(1)(i) dismissing its suit; it lodged a copy of this with the Clerk of the Northern District of Illinois the next day. The Clerk did not accept the copy for filing, because the record had not arrived from Arizona. On July 2 Mahurkar filed his answer IMPRA's complaint. This entered the case file when the record was lodged in Chicago on July 6. The Clerk of the Northern District of Illinois never did file the copy of the notice of dismissal.

Mahurkar asks me to enter an order "enforcing" the transfer of the case notwithstanding IMPRA's notice dismissing it; he also seeks an award of sanctions against IMPRA. Just in case, Mahurkar sued IMPRA and four hospitals in the Northern District of Illinois. IMPRA's motion to dismiss *that* case, *IMPRA II*, on the ground that venue is improperly laid in Illinois, is discussed below.

Rule 41(a)(1)(i) allows the plaintiff to dismiss its action—without prejudice and without costs—until the defendant files its answer or a motion for summary judgment. IMPRA got its notice on file before Mahurkar got an answer on file. Although Mahurkar says that IMPRA filed in the wrong court, it would be more accurate to say that IMPRA filed in *both* courts, when the record was in transit. Arizona lost the case on June 26, and Illinois did not gain it until July 6. Delays in transit do not catapult cases into the Twilight Zone. Parties must be able to file *somewhere*, and IMPRA took the precaution of sending its papers to both courts. Judges usually say that the transfer is not complete until the record is lodged with the transferee court, e.g., *Lou v. Belzberg*, 834 F.2d 730, 733 (9th Cir.1987); *Starnes v. McGuire*, 512 F.2d 918, 924–25 (D.C.Cir.1974) (in banc), which means that IMPRA filed in time and in the right place. See *Sheldon v. Amperex Electronic Corp.*, 52 F.R.D. 1 (E.D.N.Y.1971), affirmed, 449 F.2d 146 (2d Cir. 1971). But even if this is not so, IMPRA beat Mahurkar to lodging a document in Illinois (neither could "file" it here before July 6).

■ A notice under Rule 41(a)(1)(i) terminates the litigation; nothing further is required of the court. *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1078 (7th Cir.1987); cf. *Cooter & Gell v. Hartmarx Corp.*, — U.S. —, 110 S.Ct. 2447,

2455–57, 110 L.Ed.2d 359 (1990). Mahurkar asks for an exception to this rule, on the twin grounds that the proceedings leading to the transfer are as substantial as the filing of an answer, and that to interpret the rule mechanically would put defendants in a bind: if they file answers, they may surrender their opportunities to obtain transfers, and if they defer filing they risk having the case pulled out from under them. Mahurkar relies on *Harvey Aluminum, Inc. v. American Cynamid Co.,* 203 F.2d 105 (2d Cir.1953), which concluded that once substantial proceedings have occurred the plaintiff loses its right to drop the case at discretion.

*Harvey's* difficulty is that Rule 41(a)(1)(i) says that the answer or a motion for summary judgment, and not proceedings that in the judge's view are "substantial", mark the end of the plaintiff's privilege to walk away from the case. *Winterland Concessions Co. v. Smith,* 706 F.2d 793, 795 (7th Cir.1983), rejects *Harvey,* as do all other recent decisions, including those in the Second Circuit itself. E.g., *Thorp v. Scarne,* 599 F.2d 1169, 1175–76 (2d Cir.1979); *Hamilton v. Shearson–Lehman American Express, Inc.,* 813 F.2d 1532, 1534–35 (9th Cir.1987); *Szabo,* 823 F.2d at 1078. Cases in recent years establish that courts lack an equitable power to disregard the terms of the civil rules. E.g., *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988); *Schiavone v. Fortune,* 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986); *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). Perhaps Rule 41 should say that the answer, a motion for summary judgment, *or a good reason* blocks dismissal. It does not, and that is that.

The motion to enforce the transfer, and for sanctions, is denied. *IMPRA, Inc. v. Quinton Instruments Co.,* No. 90 C 3835, is dismissed. IMPRA should review Fed.R. Civ.P. 41(d) and 28 U.S.C. § 1927 before it re-files this or any similar suit in any district.

3. IMPRA also wants to get rid of Mahurkar's mirror-image action, *Mahurkar v. IMPRA, Inc.,* No. 90 C 3941, originally filed in this district. IMPRA's motion to dismiss *IMPRA II* for improper venue depends on 28 U.S.C. § 1400(b), the special patent venue statute:

Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

IMPRA submits that it does not "reside" in Illinois. It is an Arizona corporation with its principal place of business in Arizona. Its head offices and manufacturing facilities are there. IMPRA does have two sales representatives and two technicians in Illinois, but it contends that because they operate out of their homes it does not have a "regular and established place of business" in Illinois. The parties earnestly debate whether *In re Cordis Corp.,* 769 F.2d 733 (Fed.Cir.1985), which refused to issue mandamus to review a conclusion that a combination of sales representatives and $90,000 of inventory in a state added up to a "regular and established place of business", undercuts cases such as *University of Illinois Foundation v. Channel Master,* 382 F.2d 514 (7th Cir.1967), which held that sales representatives who do not carry and deliver from inventory are not a "regular and established place of business".

I need not decide this difficult question, because *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574 (Fed.Cir. 1990), holds that for purposes of § 1400(b) "the judicial district where the defendant resides" includes every place in which a corporation "is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c), as amended by the Judicial Improvements and Access to Justice Act, 102 Stat. 4642, 4669 (1988). Section 1391(c) provides that for "purposes of venue *under this chapter,* a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." (Emphasis added.) Section 1400(b) is part of the same "chapter" as § 1391(c), and *VE Holding*

concludes that the amendment applies to § 1400(b) notwithstanding *Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957), which held that nothing in the earlier version of § 1391(c) affects § 1400(b). *VE Holding,* coming from the court to which an appeal will lie, is authoritative in this case. IMPRA agrees that its sales representatives and technicians expose it to "personal jurisdiction" in Illinois. I therefore deny its motion to dismiss for improper venue.

■ 4. More than a year into *Vas–Cath,* Mahurkar amended his complaint to add a claim under 35 U.S.C. § 271 against Geoffrey Martin and M. Jane Martin, Vas–Cath's officers and beneficial owners. The Martins are Canadian citizens who have visited Illinois only in their capacity as employees of Vas–Cath. They have moved under Fed.R.Civ.P. 12(b)(2) to dismiss the claim against them for want of personal jurisdiction, invoking the fiduciary shield doctrine, a rule that persons who act only in a representative capacity do not expose themselves to personal jurisdiction. Extensive discovery has been taken, and the question is ready for decision on a full record under Rule 12(d).

Mahurkar wants the Martins in the case to improve the chance of collecting any judgment. Vas–Cath is a closely held firm; its only shareholders are two corporations wholly owned by the Martins. Prudent tax planning in Canada, as in the United States, calls for withdrawing most of a close corporation's earnings as compensation, avoiding successive corporate and personal taxation. During the last two years the Martins caused Vas–Cath to pay them salaries and bonuses of some $640,000 per year apiece. Vas–Cath holds only a few hundred thousand dollars in cash at any time, and its principal assets are patents and other intellectual property of uncertain value. Banks have security interests in these assets. Although Mahurkar holds a Canadian judgment against Vas–Cath for patent infringement, the firm has not set aside any assets to satisfy the obligation (which remains unliquidated), and its accountant has put a going-concern qualification on the firm's financial statements in light of the Canadian judgment.

None of these circumstances suggests that the Martins are trying to squirrel assets away from judgment creditors so much as it demonstrates a byproduct of the tax-conscious way the Martins have managed their business. Although Mahurkar expresses alarm at the Martins' inability to describe the functions of and relations between the six closely-held firms that hold their business assets, there is nothing suspicious in entrepreneurs leaving legal details to their lawyers and accountants. The division of labor produces great benefits for society. Still, Mahurkar has a legitimate fear that he will be unable to collect an American judgment—indeed he may prove unable to collect all of the Canadian judgment. Because § 271 imposes direct (not just vicarious) liability for patent infringement on the corporate officers who cause their firm to violate the patent laws, Mahurkar can recoup from the Martins the sums they withdrew from Vas–Cath—if only the court has personal jurisdiction over the Martins, whose occasional presence in Illinois invariably is on corporate business, such as touting Vas–Cath's line at trade shows.

If the Martins had a "regular and established place of business" in Illinois, 28 U.S.C. § 1694 would authorize service of process. Their occasional trips to Illinois do not satisfy this standard, and because § 1694 refers to a place of business in "the district" in which the action is filed, the Martins' trips to other places in the United States do not support personal jurisdiction. Although the Martins' "contacts" with the United States as a whole could support personal jurisdiction anywhere in this country, *Lisak v. Mercantile Bancorp, Inc.,* 834 F.2d 668, 671 (7th Cir.1987); *Fitzsimmons v. Barton,* 589 F.2d 330, 332–33 (7th Cir.1979); *Go–Video, Inc. v. Akai Electric Co.,* 885 F.2d 1406, 1414–16 (9th Cir.1989), there must be a statute authorizing service of process. *Omni Capital International v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). Section 1694 does not apply, so I must turn to

state law, which oddly enough furnishes the usual source of authority to hale foreign defendants into federal court. Fed.R. Civ.P. 4(e), (i).

In 1989 Illinois amended its long-arm statute to assert as much authority over non-resident defendants as the due process clause of the fourteenth amendment will allow. Ill.Rev.Stat. ch. 110 ¶ 2–209(c). So far as the Constitution is concerned, a state may choose to adjudicate claims made against non-residents who commit wrongs within the state's territory, or deliberately send into the state products that violate its rules. *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). *Calder* rejected a contention that the wrongdoer's status as agent of a corporate principal would protect him from the state's assertion of authority. 465 U.S. at 788, 104 S.Ct. at 1486. See also *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473, 1482, 79 L.Ed.2d 790 (1984). The Constitution accordingly does not compel Illinois to have a fiduciary shield doctrine. Mahurkar concludes that ¶ 2–209(c) accordingly abolishes the fiduciary shield doctrine in Illinois. Because the Martins' promotion of their wares in Illinois violates § 271, if Vas–Cath's products indeed infringe Mahurkar's patents, it follows (Mahurkar submits) that the court has jurisdiction over the Martins.

The fly in the ointment is that until 1981, when *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203 (1981), appeared as bolt from the blue, Illinois courts believed that the long-arm statute then in force also exercised the state's maximum power over non-residents, yet they applied the fiduciary shield doctrine nonetheless. E.g., *Hurletron Whittier, Inc. v. Barda*, 82 Ill.App.3d 443, 37 Ill.Dec. 838, 402 N.E.2d 840 (1st Dist.1980); *Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.*, 66 Ill. App.3d 789, 23 Ill.Dec. 352, 383 N.E.2d 1379, 1385 (1st Dist.1978). The restoration in 1989 of a state of affairs that existed until 1981 is no reason to conclude that the state has thrown over a venerable rule. Perhaps Illinois maintained the doctrine all these years only because it believed that

the Constitution gave it no leeway. Now that *Calder* and *Keeton* have removed this misapprehension, the argument would go, Illinois will exercise its full powers. Perhaps, however, the doctrine serves as an equitable modification of the statute, in which case it would survive swings in constitutional doctrine. No Illinois court has spoken on the subject since the new ¶ 2–209(c) took effect, but two judges of this district have concluded, at least implicitly, that the doctrine retains vitality. *Young v. Connecticut Mutual Life Insurance Co.*, 1990 WL 125496, 1990 U.S.Dist. Lexis 10826 (N.D.Ill.); *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F.Supp. 126, 134–35 (N.D.Ill.1989). This is an assessment I am reluctant to question in the absence of rumblings from the state courts.

To say that the doctrine still exists is not to say that the Martins must prevail. Common law doctrines, of which this is one, have uncertain contours. Illinois treats the fiduciary shield doctrine as one of judicial discretion and not defendants' right. E.g., *Washburn v. Becker*, 186 Ill.App.3d 629, 633, 134 Ill.Dec. 418, 542 N.E.2d 764 (1st Dist.1989), and the many cases collected in *Torco*, 730 F.Supp. at 135–40. One common reason to deny defendants the benefit of the shield is failure to maintain adequate separation between the person and the corporation—perhaps not enough of a breakdown to justify holding the person liable for the corporation's debts, but enough of one to justify treating the personal acts as a source of personal (as opposed to corporate) liability. The Martins are in jeopardy on this approach, for they conducted their business informally. Several of the corporations have a spotty record of holding annual meetings and acting by formal resolution of the board. There are casual intercorporate exchanges of funds. The Martins charge personal expenses on corporate credit cards, and the books do not clearly reveal whether these are charged back or simply swallowed by the firms on the theory that the corporations "are" the Martins anyway.

What seems most important to me, however, is not sloppy record keeping at Vas–Cath but the fact that if there is no jurisdiction in this district, there may be no jurisdiction anywhere in the world. Section 271 says that corporate officers are *personally* liable when they induce a corporation to infringe a patent. Mahurkar does not seek to hold the Martins vicariously liable for Vas–Cath's acts or require them to pay Vas–Cath's debts; he seeks to hold them liable under the terms of § 271 for their own acts. To say that the officer is not subject to personal jurisdiction because the acts of inducement were committed as a corporate employee is to say that § 271 cannot support liability for corporate officers, despite its terms. The rule would block litigation *everywhere*. At oral argument the Martins' lawyer said with commendable candor that they could not be sued anywhere—not in the United States, given the fiduciary shield doctrine, and not in Canada (counsel suspected) because Canadian courts would not take cognizance of claims under the United States patent laws. Federal courts in the United States have exclusive jurisdiction of patent cases; even if they did not, Canada may be reluctant to hear claims against its citizens arising under foreign law when the entire ill effect is felt abroad.

I doubt very much that Illinois would interpret the fiduciary shield doctrine to protect those who may be liable under § 271 from any suit, anywhere in the world. Of course I cannot be sure of this. Because federal courts have exclusive jurisdiction of patent cases, the question could not be submitted to the state courts except by certification. And Rule 20 of the Rules of the Supreme Court of Illinois provides that only the Supreme Court of the United States or the United States Court of Appeals for the Seventh Circuit may certify questions of state law to that court—neither this court nor the Federal Circuit, to which an appeal lies from my decision, has been invited to certify questions of law.

So I am doomed to guess how a state court would answer a question of state law that has not been, and never will be, put to that court. My best estimate is that Illinois would allow this suit to proceed against the Martins. The fiduciary shield doctrine is designed to make the corporation principally liable and to facilitate commerce by reducing employees' fear that they could incur liability for the corporation's debts merely by entering Illinois on corporate business. A rule that would allow the employees to remove assets from corporate solution (even for tax reasons) and then shield the employees from their personal liability for their own acts would go too far. Accordingly, I deny the Martins' motion to dismiss for want of jurisdiction.

5. Mahurkar named as defendants in *IMPRA II* not only IMPRA, the manufacturer of the challenged catheters, but also four hospitals that purchase and use IMPRA's devices. These four have asked for summary judgment on all claims involving infringement of U.S. Patent No. 4,692,141. *Vas–Cath Inc. v. Mahurkar*, 745 F.Supp. 517 (N.D.Ill.1990), holds, among other things, that the '141 patent is invalid because the application for this utility patent was filed too long after Mahurkar's own filings in Canada, and Mahurkar is not entitled to priority from the filing of an application for a design patent. I entered judgment under Fed.R.Civ.P. 54(b), and the decision is on appeal to the Federal Circuit. Meanwhile it has full effect, and the hospitals are entitled to partial summary judgment under *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). IMPRA and Kendall are entitled to the same relief, which I will allow without the need for formal motion. I will not, however, enter Rule 54(b) judgments in favor of Kendall, IMPRA, and the four hospitals. One appeal to the Federal Circuit is enough; the other parties may file briefs as amici curiae to make any arguments Vas–Cath omits in defense of its judgment. After the Federal Circuit renders its decision I will enter any necessary judgments on this subject.