SAM WILLIS, Plaintiff-Appellant, *v.* WEST KENTUCKY FEEDER PIG COMPANY, Defendant-Appellee.

(No. 11214;

Fourth District—January 14, 1971.

Knuppel, Grosboll, Becker & Tice, of Petersburg, for appellant.

Jefferson Lewis, of Petersburg, and Brunsman, Beam & Crain, of Springfield, for appellee.

Mr. JUSTICE CHAMBERLAIN delivered the opinion of the court:

The plaintiff brought an action against the West Kentucky Feeder Pig Company for damages from an alleged breach of warranty in the sale of feeder pigs. A jury returned a verdict for the plaintiff in the amount of $490.64.

The trial court granted a judgment *n.o.v.* for the defendant on its post-trial motion. The plaintiff appeals from this ruling.

Defendant cross appeals on the trial court's denial of its motion to quash service of summons on the grounds there were no facts to warrant jurisdiction over the defendant.

We shall take up the question of jurisdiction first.

The defendant contends that insufficient facts were shown to give the Illinois Court jurisdiction over this case. The defendant is a foreign corporation operating in the State of Kentucky. Service was had on the defendant under the "Illinois long arm statute," Ill. Rev. Stat. 1965, ch. 110, par. 17(1)(a).

In September, 1966, Mr. Leo Reiser contacted the plaintiff and inquired whether he was interested and subsequently 200 pigs were delivered from the defendant's company to the plaintiff's farm. The order for the pigs was made over the telephone to the defendant. Defendant contends that Reiser was either plaintiff's agent or an independent contractor. The plaintiff paid the truck driver for the pigs at the time of delivery and the check was made payable to the defendant.

The defendant and plaintiff had had prior and similar circumstances. Initial contact and subsequent delivery were made in Illinois as well as payment.

We believe under these facts that sufficient acts occurred in Illinois to give this State jurisdiction over this transaction. If the plaintiff for some reason had refused delivery of the pigs, the defendant certainly would have used Illinois courts to sue for breach of contract. Illinois law would have been applicable.

■■ Therefore, we find that the trial court properly denied the motion to quash service of summons.

At the time of delivery three pigs were refused because they looked ill. Medication was placed in the water of the remaining pigs. The day after the pigs were received the plaintiff thought they looked ill. Mr.

Reiser was called several times during the next few days. Each time the plaintiff would place additional medication in their water.

Eleven days later the plaintiff contacted a veterinarian and he examined the pigs eight times through early October of 1966. On October 11 Dr. Prozka, another veterinarian acting on behalf of the defendant, examined the pigs and instructed the plaintiff's doctor to inject penicillin in the pigs.

Later, on October 26, 1966, the plaintiff made a complaint with the Department of Agriculture. Mr. James Austin, a department employee, examined the pigs and found most did not have ear tags while some had Kentucky or Tennessee tags. Plaintiff had contended that the pigs were all to be Kentucky pigs with tags.

Between the end of October and sometime in December about thirteen to sixteen pigs died and the rest were sold. Some of the pigs had gained as much as 150 pounds before the sale.

It was eleven days after delivery that the plaintiff first contacted his veterinarian, Dr. Byerly. It was not until October 10 or 11, 1966 that the defendant's veterinarian, Dr. Prozka, was first contacted and informed of the alleged condition of the pigs.

What ailment the pigs in fact had was disputed by the two doctors.

After the jury returned a verdict on behalf of the plaintiff, the trial court set aside the verdict and entered judgment on behalf of the defendant. At the time the trial court filed a comprehensive and detailed memorandum of opinion setting forth his rulings and reasons therefor.

Plaintiff contends that the facts produced at trial created a question for the jury to decide and that the trial court erred in setting aside the jury's verdict.

Both counsel cite as authority the case of *Pedrick v. Peoria and Eastern Railroad Company*, 37 Ill.2d 494, which, at page 510 stated:

"* * * In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspects most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand * * *."

Each party contends that this principle supports his position on this appeal.

Both sides also rely on various sections of the Uniform Commercial Code, Chapter 26, Illinois Revised Statutes, 1965.

Plaintiff cites in particular Section 2—314, Chapter 26, Illinois Revised Statutes, 1965, which states:

"(1) Unless excluded or modified (Section 2—316), a warranty that

the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind * * *
"(2) * * *
(c) * * * are fit for the ordinary purposes for which such goods are used; and * * *"

Plaintiff contends that the defendant breached the above section by delivering pigs that were sick. His doctor had testified they had PPLO, a form of animal pneumonia. It is suggested that the pigs were ill from the time of delivery until the ones in question died. Defendant counters that the above section is not applicable to this transaction and cites the following section of the Code.

Section 2—316 states:

"Exclusion or Modification of Warranties.

(1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this Article on parol or extrinsic evidence (Section 2—202) negation or limitation is inoperative to the extent that such construction is unreasonable.

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the fact hereon.'

(3) Notwithstanding subsection (2)

(a) unless the circumstances indicate otherwise, all implied warranties excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

(b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and"

The defendant argues that this section in connection with defendant's exhibit 1 limited his liability. Since the exhibit has great importance in this case, we set it forth in full as follows:

270

# WEST KENTUCKY FEEDER PIG CO., INC.
**Box 31, Route 1**
**CORYDON, KENTUCKY 42406**
**Phone: (Area 502) 533-7311**

**N9 417**

## COMPANY POLICY, LOSS OF FEEDER PIGS
(Important — Please Read)

### LOSSES OCCURRING WITHIN SEVEN (7) DAYS FOLLOWING DELIVERY

West Kentucky Feeder Pig Co., Inc. (hereinafter called "company") will refund the purchase of any feeder pigs in excess of two percent (2%) which are lost within seven (7) days following delivery, provided:

1. The loss was not caused by accident, poisoning or error in handling or management.
2. The pigs are placed on sulfathiazole at a rate of one pound (1 lb.) to 200 gallons of drinking water for a period of seven (7) days following receipt. Continue the sulfathiazole water medication (1 lb./200 gallons drinking water) for seven (7) additional days if excess coughing is present after first 7 days water medication. NOTE: Premix the sulfathiazole in hot water before dumping in water tank. Caution — Do not mix wormer and sulfathiazole together in drinking water.
3. Employ Tylosin or Neomycin (according to label directions) in the drinking water if scours occurs.
4. The pigs are placed on a commercial starting ration containing ASP-250 to 75 pounds body weight.
5. Individual injections of antibiotics were given to any pigs requiring same. Repeat injections daily as needed.
6. A local veterinarian was consulted in event of disease problems or mortalities. The veterinarian must notify Yeager and Sullivan veterinarians by telephone (Area 219 — 686-6573 or 967-4149) at time he is consulted on problem which must be within seven (7) days following receipt of pigs. The veterinarian's statement of diagnosis and ear tags of pigs lost must be mailed within eight (8) days following delivery to: Yeager and Sullivan, Inc., Camden, Indiana.
7. The company will not be responsible for medication or veterinary expenses.
8. The company will not be liable for any loss unless feeder (purchaser) complies with the foregoing.
9. The company represents that it is of the opinion that the pigs will be good, healthy pigs on delivery to feeder's premises. Note: The company recommends worming all pigs with piperazine (through feed or water) three (3) weeks following receipt.

Ship to... Sam Willis ........................Address (City) R1 Grandview......

DATE... 9-17-66 ...TERMS...........................STATE...........Illinois....

Number... 200 ...Scale Wt. 13000 ...lbs.

Number... 200 ...x 40 lb. Std. 8000 ...lbs. @ $ 19.00 ...Per Hd. $ 3800.00

Under or Excess Wt. (097)........ 5000 ...lbs. @ $ .15 ...Per Lb. $ 750.00 / 750.00

Total Pig Price............... 4550.00 / 4680.00

Medication........................ 68.25 ...... 4487.75 ...... 70.70

3 pigs returned

9/17/66

PD.

$ 23.40

Total Medication Price $ 4609.80

Avg. Price $ 22.75 ...Avg. Wt. 65.00 ...Grand Total $ 4680.18

Price includes health inspection by a veterinarian, vaccination for cholera (M.L.V. and serum) and erysipelas, spraying, castration, grading, and delivery.

I have accepted the above lot and determined the quality and quantity and terms to be as represented. I have read and understand the requirements of the starting guarantee.

This exhibit contends the seller limits any warranties to the delivering instrument and that the plaintiff failed to comply with its terms and liabilities. And since he failed to comply with the conditions, the trial court properly rules as a matter of law that plaintiff was not entitled to a verdict.

■■ Under the provisions of Section 2—316(3) (a), *supra*, implied warranties can be excluded by language that purports to limit the usual implied warranties. Defendant's exhibit 1, referring to the "company policy" concerning the seven day rule, is explicitly within the provisions of the section.

A previous case decided in this district, *Stanton v. Shakofsky* (1954), 2 Ill.App.2d 527, also dealt with a hog farmer who purchased diseased hogs. The farmer accepted the hogs after an examination of them. It turned out the hogs were infected with cholera. Recovery for them was permitted on the theory that the defect was not readily ascertainable.

■■ In this case the plaintiff examined the hogs, rejected three of them and accepted the balance. Under the provisions of Section 2—316(3) (b), *supra*, there is no implied warranty where the examination will disclose any defect, such as the case was here.

The Uniform Commercial Code has not had an abundance of cases interpreting these sections. One case, *Hunt v. Perkins Machinery Co., Inc.* (Mass. 1967), 226 N.E.2d 228, held that it was a question of law whether a disclaimer of warranty is sufficiently prominent on the instrument in question.

■■ This is precisely what the trial court held, and we do not disagree with that finding.

On the basis of the delivering instrument and the evidence in this case we believe the trial court properly granted a judgment *n.o.v.* for the defendant.

■■ We would finally comment that it may seem severe to rigidly enforce the terms of the agreement. However, there is no issue raised that the document limiting the warranties was so unconscionable or so grossly unfair as to allow a departure from the terms. We feel the plaintiff had dealt with the defendant on prior occasions and had considerable experience in this type of commerce. Consequently, we see no basis to find that the plaintiff was unfairly dealt with.

Plaintiff finally contends that if he were barred under the terms of defendant's exhibit 1 such bar was waived by the defendant's subsequent conduct.

The defendant through its veterinarian had instructed Dr. Byerly to innoculate all the pigs. This action took place over three weeks after

delivery. Additional consultation and exchange of information was had during this period of time.

██ We do not believe that this action constitutes any evidence of waiver. The plaintiff had already failed to comply with the conditions precedent of the delivering instrument. The fact that defendant tried to cooperate does not constitute a waiver. This action is attributable under these circumstances to customer relations and good will to hopefully a consistent customer.

Therefore, we find the decision of the trial court was correct.

Judgment affirmed.

SMITH, P. J., and TRAPP, J., concur.