**Richard ANDRUCCI, et al.,
Plaintiffs,**

v.

**GIMBEL BROTHERS, INCORPORATED, Defendant.**

**Civ. A. No. 69–905.**

United States District Court,
W. D. Pennsylvania.

Oct. 24, 1973.

———◆———

Howard A. Specter, Edward C. Smith, Litman, Litman, Harris & Specter, P. A., Pittsburgh, Pa., for plaintiffs.

Louis Caplan, and Kenneth G. Jackson, David S. Watson, Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

On May 8, 1973, this Court entered an Order denying plaintiffs' motion for class determination in this case. (C.A. No. 69–905, May 8, 1973). In accord with Katz v. Carte Blanche Corp., 52 F. R.D. 510 (W.D.Pa.1971), aff'd (3d Cir. 1973), rehearing granted (3d Cir. 1973), the merits of this action for violation of the Truth-In-Lending Act (15 U.S.C. § 1601 et seq.) were scrutinized only to the extent necessary to determine whether plaintiffs had produced "a minimal demonstration that the complaint was 'sincere' or 'more than frivolous'." *Katz, supra* at 513. It was held that the action was *not* more than frivolous, and thus the plaintiffs were denied class representative status.

The case is now before the Court on defendant's motion for summary judgment. In the preceding Opinion in this case, decided upon a stipulation of facts agreed upon by the parties, it was held that each of plaintiffs' five allegations [1] as to the manner in which defendant's July 1969 periodic statement had allegedly failed to comply with the disclosure requirements of the Truth-In-Lending Act and Regulation Z (12 C.F.R. § 226.1 et seq.) were without merit. It was held that plaintiffs' claims were not "more than frivolous"; that defendant's

---

1. Plaintiffs' allegations are set out in their Complaint and Narrative Statement and in the preceding Opinion of this Court. They may be summarized as being that defendant failed to set forth its annual interest rate and the manner of its computation on the face of its periodic statements in a clear and conspicuous manner.

efforts to comply with the Act were "eminently successful"; and that the forms used by defendant Gimbels during the transition period provided for in Section 226.6(k) of Regulation Z[2] attained the required degree of disclosure "with honors". For the purpose of this summary judgment determination, these express findings amount to a conclusion by the Court as a matter of law that defendant Gimbels has fully complied with the Truth-In-Lending Act in its periodic statements. Thus, the only question which remains is whether there exist genuine issues of material fact which would preclude the granting of summary judgment. F.R.Civ.P. 56(c).

Plaintiffs contend that there are two such factual issues. First, an issue of fact is said to exist as to whether defendant made all required disclosures in a clear and conspicuous manner. Second, plaintiffs contend there is a factual issue as to whether defendant took *bona fide* steps prior to July 1, 1969 to obtain the printed forms which would comply with the Act. Before an inquiry is undertaken into these questions, some background is necessary.

The defendant, Gimbel Brothers, Inc., on July 1, 1969 and for a number of years prior thereto, was engaged in operating retail department stores throughout the United States and in the area around Pittsburgh, Pennsylvania. During this period defendant regularly extended credit to its customers as part of its business practice. The sixteen plaintiffs in this case are consumer customers of defendant to whom retail credit has been extended or offered.

In the fall of 1968, defendant became aware of the passage of the Truth-In-Lending Act by Congress and of the necessity for revision of the credit billing statements sent to customers in light of the Act's requirements. The Act was to become effective July 1, 1969, after which date the prescribed information was required to be disclosed on all periodic statements. The July 1, 1969 date was to be effective in all cases except those situations covered by Section 226.-6(k) of Regulation Z, which provides as follows:

> "Transition Period. Any creditor who can demonstrate that he has taken bona fide steps, prior to July 1, 1969, to obtain printed forms which are necessary to comply with requirements of this part may, until such forms are received but in no event later than December 31, 1969, utilize existing supplies of printed forms for the purpose of complying with the disclosure requirements of this part, other than the requirements of paragraph (b) of § 226.9; Provided, That such forms are altered or supplemented as necessary to assure that all of the items of information the creditor is required to disclose to the customer are set forth clearly and conspicuously."

Defendant set out to revise its periodic statements with the objective of having new forms in use by May 1, 1969, when it planned to open a branch store in Monroeville, which event in itself dictated a revision of its billing statements. In February of 1969, defendant sent copies of its revised periodic statement to its printer and to legal counsel for the Pennsylvania Retailers Association (P.R.A.). In March, P.R.A. counsel advised defendant of their substantial uncertainty as to the precise requirements of the Act. By April, counsel were able to suggest further revisions of the billing forms to defendant. At that time, P.R.A. counsel also advised that while Gimbels was working to incorporate the suggested revisions into its forms, it could continue to use existing forms until December 31, 1969. This latter piece of advice, of course, was given in accordance with the clear language of Section 226.6(k), set out above.

On October 1, 1969, Gimbels began mailing out its fully revised billing forms. From July until October 1, 1969, in accordance with the advice of counsel

2. See pages 1242–1243, *infra*.

and the proviso of Section 226.6(k), Gimbels supplemented its billing statement with a supplemental form designed to effect complete compliance with the Act.

### I.

██ This capsulized history of defendant's efforts makes clear that they took *bona fide* steps to obtain printed forms which would meet the Act's requirements prior to July 1, 1969. Plaintiffs would have the Court believe that Congress and the Federal Reserve Board intended the Section 226.6(k) grace period to apply *only* to those creditors who, prior to the critical date, had satisfied themselves, their counsel and presumably the Federal Reserve Board itself that they possessed forms which conformed in every particular to the requirements of the Act and then found themselves faced with practical problems of printing and the like which prevented their distribution by July 1, 1969. Such an interpretation would clearly be unfounded.

As was stated in the previous Opinion in this case, "the obvious intent of Congress was to set standards by which to achieve meaningful 'truth-in-lending' and not to deviously set traps by which windfalls could be reaped by fanciful lawyers". Section 226.6(k) embodies a similar intent—to allow a grace period during which the confusion and uncertainty attendant to the Act could be brought into focus by the parties concerned without the possibility of legal penalties being imposed.

The Truth-In-Lending Act, no less than many other pieces of legislation, was and is subject to more than one interpretation as to many of its sections. Astute and conscientious minds in both government and private legal circles have had some difficulty in ascertaining with precision the scope and impact of the Act. Whether this lack of legislative clarity is a matter of accident or design need not detain us here. What is important is that Section 226.6(k) impliedly recognizes the uncertainty to which the Act and Regulation Z were subject and allowed for the orderly, non-litigous resolution of the problems involved.

To hold upon this record that defendant's efforts to understand the Act and undertake full compliance with it were made in less than good faith simply cannot be done. It is held that defendant Gimbels took all necessary *bona fide* steps within the meaning of Section 226.6(k) of Regulation Z to obtain forms prior to July 1, 1969 and thus was able to take full advantage of the grace period allowed by that section.

### II.

Plaintiffs also contend that a factual issue exists as to whether defendant's disclosures were clearly and conspicuously made. Plaintiffs cite this Court to the recent case of Peritz v. Liberty Loan Corp., CCH Consumer Credit Guide ¶ 98,969 (N.D.Ill., No. 72C 1827, March 5, 1973), wherein it was held that the question of whether defendant's disclosures were clear and conspicuous was a mixed question of law and fact for the jury. Needless to say, if a question of fact exists, summary judgment is unavailable to the moving party under F.R. Civ.P. 56(c). It appears that the *Peritz* case is the only decision as yet on this precise question under the Truth-In-Lending Act. I do not find its reasoning persuasive and choose to hold otherwise.

Speaking in a slightly different context, Corbin on Contracts, § 554, pp. 219–222, states that:

> "The question of interpretation of language and conduct—the question of what is the meaning that should be given by a court to the words of a contract, is a question of fact, not a question of law . . . . We must bear in mind, however, that this question of fact is like other questions of fact in this: it may be a question that should be answered by the judge, rather than by the jury. In cases in which it is so answered, it is probable that the interpreting judge may say

that interpretation of language is a 'question of law for the court'. So often has this been said throughout our legal history that we might be justified in defining 'question of law' as any question that *is* answered by the court rather than by the jury . . . . The adoption of this usage, however, would make the term useless except as a term that is descriptive of results—a basket into which to throw court decisions after they have been made; it would be of no service in classifying questions so as to help the court determine whether the question before it ought to be answered by the judge or should be submitted to a jury . . . . [Thus,] it is necessary to find some test for determining whether it is for the judge rather than the jury. *As in the case of all other matters of fact,* we can here lay down the rule that if the evidence is so clear that no reasonable man would determine the issue before the court in any way but one, the court itself will determine the issue, either by directing the verdict or by dispensing with any verdict whatsoever." (Emphasis added.) [3]

■ Rather than dip any further into the semantic quagmire which impedes any attempt to distinguish questions of fact from questions of law, this Court chooses to follow the precept set down by Corbin above. Defendant's disclosures were so obviously clearly and conspicuously made that this Court would not permit a jury to hold otherwise. Therefore, as must be the case in the interpretation of a document clear on its face, this Court holds as a matter of law that Gimbels' disclosures were clear and conspicuous. To hold, as the *Peritz* case did, that the question is one of fact is to hold that a lengthy and expensive jury trial, or at least a trial without a jury, is necessarily entailed whenever a plaintiff alleges that the disclosure made was not clear and conspicuous.

That during the July to October transition period Gimbels included its supplementary forms in envelopes which also contained promotional materials does not detract from the clarity of its disclosure, to reiterate a point made in the previous Opinion. Gimbels did all that it could do and all that was required to do by the proviso of Section 226.6(k).

### III.

■ Plaintiffs' final contention, that defendant failed to comply with Section 226.6(c) of Regulation Z dealing with disclosure of inconsistent state law, is without merit. Defendant did disclose the state minimum monthly charge on its forms. The inconsistency, that federal law permits a 50-cent minimum monthly charge without disclosure of the interest rate [§ 226.5(a)(B)(iii)], while state law allows a minimum 70-cent charge [69 P.S. § 1303(h)], is clearly *de minimis*. The disclosure was made in manner and form consistent with Section 226.6(c).

There existing no genuine issue of material fact to preclude the entry of summary judgment and defendant having been found to have been in full and complete compliance with the Truth-In-Lending Act on the record presented, summary judgment will be entered for defendant Gimbels.

The above Opinion shall constitute the findings of fact and conclusions of law required by F.R.Civ.P. 52. An appropriate Order in accordance with this Opinion will be entered.

---

3. The Corbin position can also be supported by analogy to decisions under the Uniform Commercial Code. The Code defines conspicuous as any provision which is attention calling (UCC § 1–201(10)) and declares that unless conspicuous a given contract term is of no effect. (e. g., the waiver of warranty of merchantability in UCC § 2– 316). Where the question has been considered, it has been held that whether a contract term is conspicuous is not a question of fact for the jury, but a question of law for the court. Sarnecki v. Al Johns Pontiac, 56 Luzerne Leg.Reg. 293 (Pa.1964; Willis v. West Kentucky Feeder Pig Co., 132 Ill.App.2d 266, 265 N.E.2d 899 (1971).