**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240350-U

Order filed January 28, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| EMMANUEL AVITIA and JAIME AVITIA, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiffs-Appellants, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-24-0350 |
| | ) | Circuit No. 18-CH-1371 |
| LUCKY MOTORS, INC., | ) | |
| | ) | Honorable |
| Defendant-Appellee. | ) | Neal W. Cerne, |
| | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Hettel and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1   *Held*:   The trial court did not err in granting defendant's motion for summary judgment. Affirmed.

¶ 2   Plaintiffs, Emmanuel and Jaime Avitia, purchased a used vehicle from defendant, Lucky Motors, Inc. The sales contract included an "as is" disclaimer excluding all implied warranties. The vehicle's engine seized shortly after the sale, and, despite the "as is" disclaimer, defendant provided gratuitous post-sale repairs to plaintiffs. The vehicle continued to have issues, and

plaintiffs sued defendant for breach of the implied warranty of merchantability. The trial court granted defendant's motion for summary judgment, and plaintiffs appealed. For the reasons set forth below, we affirm.

¶ 3                                              I. BACKGROUND

¶ 4        Initially, we note that plaintiffs initiated this action on November 18, 2018. On September 20, 2021, plaintiffs filed a motion for leave to file the operative four-count second amended complaint (amended complaint); leave was granted on October 13, 2021. Plaintiffs appended the proposed amended complaint as an exhibit to their motion for leave but failed to actually file the amended complaint after obtaining leave. Notwithstanding, defendant filed an answer to the amended complaint on November 12, 2021, without raising the issue of filing, and the court proceeded on the merits.

¶ 5        While not raised by either party on appeal, we nevertheless address this deficiency in the record to ensure the amended complaint was properly considered. "While it is undoubtedly the general rule that when leave is given to amend a pleading, that does not constitute an amendment [citation], *** it has been generally held that where the parties treat a proposed amendment as having been made, it may be considered by the court as having been made." *Pinkerton v. Oak Park National Bank*, 16 Ill. App. 2d 91, 106 (1958). Because defendant filed an answer to the amended complaint and did not otherwise object to its absence from the record, the parties treated the amendment as having been made, and the claims therein were properly considered by the court. Before turning to plaintiffs' claims, we observe that the allegations relevant to this appeal are set forth sporadically within the amended complaint, as they were only set forth in the "Background" section. We detail plaintiffs' claims as they appear to have been accepted by the parties and the court.

2

¶ 6       In September 2015, plaintiffs purchased a 2007 Audi S6 from defendant. The purchase was subject to an "as is" clause in the buyer's guide, which stated, "NO WARRANTY" and "YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle." Moreover, the standard buyer's order indicated, "this vehicle is sold 'AS IS' and [blank] hereby expressly disclaims all warranties, either express or implied, including any IMPLIED WARRANTY OF MERCHANTABILITY ***."

¶ 7       Plaintiffs alleged that the vehicle's engine was defective at the time of the sale and seized shortly thereafter. Emmanuel testified via affidavit that, after the engine seized, he "made arrangements with [defendant] to have the car repaired, and [the] agreement was that [Emmanuel] would pay part of the cost, and [defendant] would pay another part of the cost." A text message submitted with defendant's motion for summary judgment read, "Authorization to begin work on the 2007 audi s6 I Emmanuel Avitia will pay 900 for the work to begin and work out the difference with [defendant]." It is unclear from the record whether defendant received any payment.

¶ 8       Thereafter, defendant replaced the vehicle's engine. Plaintiffs' affidavit further explained that the initial repair was unsuccessful, and the vehicle was taken to defendant "several times afterwards." Defendant made additional attempts to fix the engine, never charging plaintiffs for the repairs. It is undisputed that defendant provided post-sale repairs worth approximately $8000. In February 2017, plaintiffs asserted their revocation of acceptance via a letter to the Better Business Bureau (BBB), where they requested the initiation of arbitration proceedings pursuant to the purchase documents. Due to a significant delay on BBB's part, arbitration never occurred, and the parties proceeded to litigation.

¶ 9       Count I of the amended complaint alleged, *inter alia*, that defendant breached the implied warranty of merchantability notwithstanding the "as is" disclaimer on the purchase documents.

Plaintiffs proceeded on the theory[1] that defendant's conduct in providing gratuitous repairs (1) modified and waived the "as is" disclaimer pursuant to section 2-209 of the Uniform Commercial Code (Code) (810 ILCS 5/2-209 (West 2018)) and (2) constituted circumstances indicating that the "as is" disclaimer did not effectively disclaim the implied warranty of merchantability pursuant to section 2-316(3)(a) of the Code (*id.* § 316(3)(a)). Plaintiffs sought, *inter alia*, equitable relief in the form of revocation of acceptance and cancellation of the contract or, alternatively, recovery of the purchase price. The remaining counts, which are not relevant to this appeal, sought relief based upon various theories of fraud.

¶ 10        Appended to the amended complaint was a report prepared by Phillip Grismer, who was identified therein as an "A.S.E. Master Automobile Technician." The report concluded that the vehicle was unmerchantable at the time of sale, observing, *inter alia*, that the engine coolant recovery tank was empty; the engine leaked coolant; and the coolant warning and check engine lights were illuminated on the dash panel.

¶ 11        At some point during the litigation, the vehicle was turned over to defendant for inspection so it could further investigate the claims set forth in Grismer's report. After learning that defendant's inspection involved making further repairs to the vehicle, plaintiffs filed a partial motion for summary judgment. In support, plaintiffs argued that defendant accepted their revocation of acceptance when defendant exercised dominion and control over the vehicle by repairing it. In opposition, defendant explained,

---

[1] Initially, plaintiffs sought relief pursuant to section 2-316(3)(a) under the theory that defendant committed fraud in that it falsely represented the history of the vehicle and concealed that it was in a prior accident. At the hearing, plaintiffs, for the first time, argued that the relevant circumstances to invalidate the "as is" disclaimer were actually defendant's gratuitous repairs of the vehicle. Because defendant did not object to plaintiffs' assertion of new arguments at the hearing, the allegations set forth in ¶¶ 9-10, and our analysis below, reflect the arguments plaintiffs made at the hearing rather than those set forth in the amended complaint.

"Upon inspection, it was observed that the engine coolant recovery tank was empty. When coolant was added, it leaked out of the vehicle. The reason for the leaking was that the thermostat housing and the thermostat itself were missing. Also, the hoses which would be attached to those parts were disconnected, there being no parts. Additionally, one hose was missing."

Defendant asserted that the missing parts were present at the time of the sale, otherwise the vehicle would not have made it 10 miles without ruining the engine. To further support its theory, defendant cited an invoice from Audi Westmont showing that, in March 2016, Audi Westmont worked on the vehicle, replaced the water pump and coolant hose, and filled and bled the coolant. Audi Westmont then test drove the vehicle and checked for leaks.

¶ 12    As part of its inspection, defendant ordered the missing parts "that either the plaintiffs or their agents removed," and the vehicle became operable and the lights on the dash panel were no longer illuminated. Defendant denied that it intended to accept plaintiffs' revocation of acceptance and stated that plaintiffs had not requested the return of the vehicle. Defendant further denied that it exercised dominion or control over the vehicle by repairing it, instead arguing that its efforts to dispel Grismer's conclusions were reasonable and that the title remained in plaintiffs' name. The court denied plaintiffs' motion for partial summary judgment.

¶ 13    Trial was scheduled to commence on April 29, 2024. In preparation for trial, plaintiffs disclosed Grismer as their controlled expert witness pursuant to Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2018). Plaintiffs offered non-pattern jury instructions as to the issue of waiver or modification of the "as is" clause, explaining that a party's course of performance is relevant to show a waiver or modification of a contract term that is inconsistent therewith. Defendant filed pre-trial materials as well, including a motion *in limine*, arguing, *inter alia*, that plaintiffs "should

be barred from introducing evidence attempting, implying, or establishing that [defendant]'s 'as is' disclaimer of implied warranties has been waived or modified." In support, defendant cited the statutory definition of "course of performance," highlighting that it exists only if the agreement "involves repeated occasions for performance by a party." 810 ILCS 5/1-303(a) (West 2018). Defendant argued that that sales contract did not involve repeated occasions for performance and, therefore, a "course of performance" could not exist. Defendant also filed 14 exhibits, including, but not limited to, the text message from Emmanuel, the standard buyer's order, the buyer's guide, and several repair orders and invoices. Defendant disclosed George Dawalibi and Christopher Wright as its Rule 213(f)(3) witnesses. Dawalibi is an automotive technician who inspected and worked on the vehicle. Wright is the secretary and chief operating officer of Lucky Motors.

¶ 14    On April 23, 2024, the parties submitted a document entitled "PARTIES['] JOINT SUPPLEMENTATION TO THEIR PRE-TRIAL SUBMISSION," which included a letter to the court. The letter explained that the plaintiffs' expert witness had become unavailable due to a severe health issue, and the parties "propos[ed] a course of action to minimize the expenditure of the Court's time by resolving the underlying issue of the case at the outset"—the efficacy of the "as is" disclaimer in the purchase documents and the availability of the implied warranty of merchantability.

¶ 15    Accordingly, plaintiffs withdrew counts II-IV of their amended complaint (various theories of fraud), proceeding only on count I (breach of implied warranty of merchantability). The parties outlined their path to resolution of the case—if the court rejected plaintiffs' jury instruction regarding waiver/modification of the "as is" disclaimer based upon a course of performance and granted defendant's motion *in limine* on the subject, "then the Defendant will move for summary judgment, and the Plaintiffs will waive any objections regarding timeliness and notice." Plaintiffs

stipulated to the admissibility of certain exhibits filed by defendant, including the text message, standard buyer's order, buyer's guide, and repair orders and invoices. Plaintiffs also agreed that defendant's witness disclosures could stand as the testimony of Dawalibi and Wright as if given at trial. If defendant moved for summary judgment, plaintiffs would supplement the record with an affidavit setting forth the factual bases for their claims.

¶ 16    On April 24, 2024, the parties appeared before the court, and plaintiffs' counsel disclosed that his proposed jury instructions "were all wrong" but that he "figured it out." He stated that defendant's argument in opposition to plaintiffs' course of performance theory was "completely correct." Plaintiffs then asserted a new argument, which formed the basis of this appeal. Plaintiffs argued that pursuant to section 2-209 of the Code, defendant's conduct (repairing the vehicle for free) was inconsistent with the "as is" disclaimer, thereby waiving and/or modifying the same.

¶ 17    After hearing argument, the court rejected plaintiffs' theory, reasoning that a repair can be done for free "for a number of reasons," including to keep the client happy. The court further reasoned that it would be "counterintuitive" and "a bad result" if an "as is" disclaimer were waived due to a good deed and promoting customer relations. The court adopted defendant's position, ruling that "the course of conduct of the repairs after this car was sold would not waive the as is representation for the car."

¶ 18    Defendant then made an oral motion for summary judgment. Thereafter, plaintiffs requested the opportunity to "make a record." Again arguing that defendant waived application of the "as is" disclaimer pursuant to section 2-209 of the Code, plaintiffs posited that defendant could have retracted its waiver "by saying[,] [']hey, we don't charge it to you this time, but don't you think that we are relinquishing our as is. We're just doing it for customer goodwill, for whatever.[']" Asserting an alternative argument, plaintiffs argued that, pursuant to section 2-

316(3)(a) of the Code, the circumstances indicated that the "as is" disclaimer was not intended to exclude the implied warranty of merchantability. Unfortunately, the report of proceedings does not contain exactly what "circumstances" plaintiffs cited, providing only the following statement by plaintiffs' counsel: "In our particular case, the circumstances indicating otherwise, which presupposes the factual inquiry, are the subsequent (indiscernible)."

¶ 19 Subsequently, defendant submitted as part of its motion the agreed upon exhibits and witness disclosure, as well as plaintiffs' prospective affidavit in opposition to summary judgment. Over plaintiffs' objection, the court granted defendant's motion for summary judgment for the reasons stated on the record.

¶ 20 On April 25, 2024, plaintiffs filed their affidavit in opposition to summary judgment, as detailed *supra* ¶¶ 7-8.

¶ 21 On April 26, 2024, the court entered the following order:

"1. Defendant is granted summary judgment on Count I of Plaintiffs' Second Amended Complaint for the reasons stated on the record;

2. On Plaintiffs' motion[,] Counts II, III, and IV of Plaintiffs' Second Amended Complaint are dismissed with prejudice;

3. Plaintiffs are granted leave to file the affidavit of Plaintiff Emmanuel Avitia in Opposition to Summary Judgment;

4. The trial date of April 29, 2024, is stricken; and

5. This is a final and appealable order."

¶ 22 Plaintiffs timely appealed.

¶ 23                                    II. ANALYSIS

¶ 24          On appeal, plaintiffs challenge the court's grant of defendant's motion for summary judgment, arguing that reasonable persons could draw divergent inferences from the undisputed facts and, therefore, the matter must proceed to trial. First, plaintiffs argue that pursuant to section 2-209 of the Code, it would be reasonable to conclude that defendant's conduct modified or waived the "as is" disclaimer and reinstated the implied warranty of merchantability. Second, plaintiffs contend that, pursuant to section 2-316(3)(a) of the Code, it would be reasonable to conclude that the circumstances indicated that the "as is" disclaimer did not operate to waive the implied warranty of merchantability. Defendant counters that the "as is" disclaimer remained intact and effective and that, in any event, plaintiffs waived the argument that reasonable persons could draw divergent inferences from the undisputed facts by failing to specifically argue as such below. For the reasons set forth below, we affirm summary judgment.

¶ 25          Pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005(b) (West 2018)), "[a] defendant may, at any time, move *** for a summary judgment in his or her favor as to all or any part of the relief sought against him or her." Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* § 2-1005(c). Our supreme court detailed the analysis as follows:

> "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. A triable issue precluding summary judgment exists where the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 162-63 (2007).

9

"Even if the question presented would ordinarily be a question of fact, if only one conclusion may be drawn from the undisputed facts, then a question of law is presented which may be appropriately dispensed with by summary judgment." *Reynolds v. Decatur Memorial Hospital*, 277 Ill. App. 3d 80, 84 (1996). We review summary judgment *de novo*. *Id.*

¶ 26    We begin with defendant's contention that plaintiffs waived their argument that reasonable persons could draw different conclusions from the undisputed facts. Whether the argument was properly preserved is inconsequential to our analysis because we review summary judgment *de novo*, which requires us to perform the same analysis as the trial court. This analysis includes an independent determination of whether there existed a genuine issue of material fact or whether divergent inferences could be drawn from undisputed facts, irrespective of how the arguments were or were not framed below. We therefore turn to the merits of the appeal.

¶ 27                    A. Waiver and/or Modification Under 810 ILCS 5/2-209

¶ 28    First, plaintiffs contend that, pursuant to section 2-209 of the Code, the "no-charge repairs at a minimum create a genuine issue of material fact as to whether a modification and/or waiver took place." In support, plaintiffs describe defendant's conduct as being inconsistent with a strict application of an "as is" disclaimer.

¶ 29    Section 2-209 provides, in pertinent part, as follows:

"(1) An agreement modifying a contract within this Article needs no consideration to be binding.

* * *

(4) *** an attempt at modification or rescission *** can operate as a waiver[.]"

"A waiver is the intentional relinquishment of a known right" and may be implied from the conduct of the party who is alleged to have committed waiver. *Home Insurance Co. v. Bauman*, 291 Ill.

App. 3d 834, 837 (1997). However, an implied waiver "must be shown clearly and unequivocally." *Id.* An implied waiver may arise when a party's conduct is inconsistent with any intention other than waiver. *Kane v. American National Bank & Trust Co.*, 21 Ill. App. 3d 1046, 1052 (1974). The party claiming the waiver occurred carries the burden of proof. *Id.*

¶ 30　　　While discussed within the context of a judgment notwithstanding the verdict, a similar issue was raised in *Willis v. West Kentucky Feeder Pig Co.*, 132 Ill. App. 2d 266 (1971), and we find its analysis instructive. In *Willis*, a buyer purchased pigs from a seller, and the sales contract included a provision stating that losses occurring within seven days of delivery would be refunded by the seller under certain conditions. *Id.* at 267, 270. Several pigs fell ill shortly after the sale, and, more than seven days after delivery, the buyer contacted the seller to disclose the problem. *Id.* at 267-68. Despite the expiration of the seven-day provision, the seller directed its veterinarian to examine the pigs and establish a treatment plan for them. *Id.* at 268. After multiple pigs died, the buyer sold those that remained and sued the seller for, *inter alia*, damages related to the breach of the implied warranty of merchantability. *Id.* at 267-69. The jury returned a verdict for the buyer. *Id.* at 268. The seller filed a motion for a judgment notwithstanding the verdict, which was granted. *Id.* The buyer appealed, arguing that the facts presented at trial created a question for the jury to decide. *Id.*

¶ 31　　　The court held that the sales contract effectively disclaimed all implied warranties via the "seven day rule" because its language "purport[ed] to limit the usual implied warranties." *Id.* at 271. The court rejected the buyer's argument that the disclaimer was subsequently waived, thereby reinstating the implied warranties, when the seller directed its veterinarian to examine and treat the pigs. *Id.* at 271-72. The court ruled that the seller's conduct did not constitute evidence of a waiver, reasoning that the buyer failed to comply with the "seven day rule" and "[t]he fact that [the seller]

11

tried to cooperate" anyway was attributable under the circumstances "to customer relations and good will to hopefully a consistent customer." *Id.* at 272. The judgment notwithstanding the verdict was affirmed. *Id.*

¶ 32       Similar to the seller in *Willis*, it is undisputed here that defendant was not contractually obligated to provide gratuitous repairs of the vehicle after the sale. The mere fact that defendant did so anyway, whether motivated by a desire to maintain customer relations or otherwise, falls woefully short of a "clear[] and unequivocal[]" showing that defendant intentionally waived its right to assert the "as is" disclaimer and assume liability for the vehicle's condition. The facts before us are even more compelling than those set forth in *Willis* due to plaintiffs' admission via affidavit that they agreed to pay a portion of the cost of the initial repair. That defendant agreed to share the initial expense of the repair, and subsequently assumed financial responsibility for additional repairs, without more, does not clearly and unequivocally demonstrate its relinquishment of the "as is" disclaimer. *Kane*, 21 Ill. App. 3d at 1052. The inadequacy of the facts presented, even when viewed in a light most favorable to plaintiffs, transformed an issue that would otherwise be a question of fact (whether conduct constitutes waiver) into an issue that was properly decided by the court as a matter of law. See *Reynolds*, 277 Ill. App. 3d at 84.

¶ 33       Plaintiffs' attempt to avoid the above analysis by citation to *Anderson v. Farmers Hybrid Companies, Inc.*, 87 Ill. App. 3d 493, 498-99 (1980), which explicitly distinguished *Willis*'s application of waiver principles, is unavailing. In *Anderson*, the buyer purchased pigs from the seller. *Id.* at 495. The back of the sales contract included a provision stating, "[a]ll claims with respect to the [pigs] shall be deemed waived unless made in writing and received by [the seller] within 30 days after delivery." *Id.* at 495-96. Twelve days after delivery of the pigs, the buyer contacted the seller by telephone stating that the pigs were diseased. *Id.* at 496. In response, the

12

seller's veterinarian provided the buyer with medical advice for the pigs on more than one occasion. *Id.* After establishing a treatment plan, the seller's veterinarian offered future assistance on the seller's behalf, should the buyer require the same. *Id.* After pigs that the buyer owned prior to the purchase also became infected, the buyer sued the seller. *Id.* at 496-97. The trial court granted seller's motion to dismiss, reasoning that the buyer's failure to plead its satisfaction of the condition precedent (*written* notice within 30 days) barred all of the claims asserted. *Id.* at 497.

¶ 34        On appeal, the buyer argued that the contract term requiring written notice was waived because the seller responded to the buyer's complaints about the pigs after receiving telephonic notice. *Id.* The court agreed, reasoning that the seller's acknowledgment of the problem, and the offering of veterinary services and further assistance, operated to waive strict compliance with the 30-day written notice contract term. *Id.* at 497-98. The court held that the buyer was justified in thinking no further claim or notice was necessary. *Id.* In distinguishing *Willis*, the court observed that the sellers there were not under any obligation to render aid due to the expiration of the seven-day period prior to notification, which was not the case in *Anderson* since the thirty-day period was still running when the seller was notified of the diseased pigs. *Id.* at 498-99. "Therefore, since [the seller's] liability even under the strict terms of the contract was still extant, such actions in offering assistance cannot be merely dismissed as maintenance of customer relations and good will but manifested a desire to solve the problem." *Id.*

¶ 35        Here, plaintiffs' reliance on *Anderson*'s fails because, as noted above, defendant was not under any obligation to act for any period of time. We therefore find *Anderson* inapposite. Plaintiffs also cite several cases from other jurisdictions, but they do not warrant independent discussion where we have Illinois precedent. Compare *Whitaker v. Wedbush Securities, Inc.*, 2020 IL 124792, ¶ 20 ("In the absence of Illinois cases on the subject, Illinois courts have looked to

UCC decisions from other jurisdictions."). We further note that adopting the rationale set forth in *Willis* is appropriate, as our research has not revealed that it is contrary to a majority approach taken by other jurisdictions that have interpreted this provision of the UCC. See *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 491 (1996) (noting that, in keeping with an underlying policy of the UCC to create uniform law across jurisdictions, Illinois has "primarily followed the majority interpretation of the UCC."). Summary judgment was thus appropriate to the extent no genuine issue of material fact existed that there was no waiver or modification of the "as is" provision pursuant to section 2-209.

¶ 36    B. "Circumstances Indicat[ing] Otherwise" Under 810 ILCS 5/2-316(3)(a)

¶ 37    In the alternative, plaintiffs contend that a reasonable person could conclude that defendant's conduct constituted circumstances that rendered the "as is" disclaimer ineffective and, therefore, required a factual inquiry that precluded summary judgment. Specifically, plaintiffs rely upon section 2-316(3)(a) of the Code, which states in relevant part, "unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is' ***." To the extent no Illinois cases have analyzed this provision, we will consider the cases from other jurisdictions cited by plaintiffs for guidance. *Whitaker*, 2020 IL 124792, ¶ 20.

¶ 38    The gravamen of plaintiffs' "circumstances indicate otherwise" argument is that defendant's post-sale repairs notwithstanding the "as is" provision is a circumstance indicating otherwise. In support, however, plaintiffs cite a series of cases highlighting that the "circumstances indicating otherwise" provision relates to representations or understandings contemporaneous to the time of the sale, and not conduct occurring post-sale. See *Knipp v. Weinbaum,* 351 So. 2d 1081, 1084-85 (Fla. 1977) (statements by seller indicated seller intended "as is" disclaimer only to apply to minor defects); *Alpert v. Thomas*, 643 F. Supp. 1406, 1415-17 (D. Vt. 1986) (circumstances

14

limited the "as is" disclaimer where the parties' negotiations demonstrated that they intended the horse to be merchantable for breeding); *Gindy Manufacturing Corp. v. Cardinale Trucking Corp.*, 111 N.J. Super. 383, 398-99 (N.J. Super. Ct. Law Div. 1970) (disagreed with on other grounds in *Ramirez v. Autosport*, 88 N.J. 277, 287 (1982)) ("One buying a new vehicle under a contract requiring acceptance of delivery 'in good condition' could readily say that in these circumstances 'as is' means new and in good mechanical condition."); and *Sorchaga v. Ride Auto, LLC*, 909 N.W.2d 550, 557 (Minn. 2018) ("fraudulent statements about the fitness of a truck for the purpose for which a truck is purchased are a circumstance that make the 'as is' disclaimers of implied warranties ineffective ***."). Simply put, section 2-316(3)(a) has been interpreted to provide relief where the buyer's knowledge of other circumstances *surrounding the sale itself* demonstrates that the "as is" language was intended to have a more limited meaning. Plaintiffs have failed to set forth any circumstances similarly persuasive to those outlined above that would support a reasonable conclusion that, at the time of the sale, they understood the term "as is" to have any meaning other than a complete disclaimer of all implied warranties. Indeed, plaintiffs' counsel acknowledged at the underlying hearing that the "as is" disclaimer was valid at the time of the sale.

¶ 39     It is evident that no reasonable person could conclude that the circumstances before us indicate that the "as is" disclaimer did not effectively exclude the implied warranty of merchantability. Summary judgment is thus proper on defendant's "as is" defense notwithstanding plaintiffs' contention that section 2-316(3)(a)'s circumstances indicating otherwise exception should apply.

¶ 40                                     III. CONCLUSION

¶ 41     The judgment of the circuit court of Du Page County is affirmed.

¶ 42     Affirmed.